DECISION AND JOURNAL ENTRY
{¶ 1} Appellants, Kemppel Homes, Inc. and Kemppel Industries, Inc. (collectively, "Kemppel"), appeal from the judgment of the Summit County Court of Common Pleas, which granted summary judgment to Appellee, Robert Franco, on his claim and on Kemppel's counterclaim for breach of contract and promissory estoppel. We affirm.
 I. {¶ 2} This action arose out of a series of negotiations between the parties, which commenced on or about September 6, 2002. In a document entitled "Real Estate Purchase Agreement" ("Purchase Agreement"), a form contract for residential properties, Mr. Franco agreed to buy from Kemppel Homes, Inc, on behalf of the owner Kemppel Industries, Inc., residential property in Fairlawn, Ohio, in Summit County. Kemppel has its principal place of business in Akron, Ohio, and Mr. Franco is a resident of Sylvania, Ohio, in Lucas County.
 {¶ 3} The Purchase Agreement also contains a separate provision entitled "Fixtures Equipment," which specified that certain items would be included, free of liens and encumbrances. Within this clause, the parties included handwritten provisions for additional fixtures and equipment to be incorporated into the house, and these added items are initialed and dated by each party.
 {¶ 4} The Purchase Agreement provides the following provision for the enforceability of the Purchase Agreement and any amendments:
"BINDING AGREEMENT: This Agreement is binding on Seller and Buyer and their heirs, executors, administrators, successors, and assigns. In order to be enforceable this Agreement must be signed by ALL Buyers and Sellers with ALL changes, additions, and deletions to be initialed by ALL Buyers and Sellers prior toacceptance. The term acceptance shall mean the actual personal communication (i.e. not secretarial, answering machine, e-mail, voice mail messages, etc.) to the offeror, or their agent, that the last offer or counteroffer has been signed and initialed byALL offerees. Execution in Multiple Counterparts and/or Facsimile signatures constitute a valid signing of this Agreement."
It appears from the Purchase Agreement that the vice president of Kemppel, Karla Kay ("Kay"), signed the Purchase Agreement on behalf of Kemppel Homes, Inc., on September 6, 2002; Mr. Franco's signature appears on the Purchase Agreement as well, but there is no date indicated next to his signature.
 {¶ 5} The Purchase Agreement states that "[t]he undersigned agrees to buy the following real estate known as: * * * 3596 Torrey Pines * * *; Fairlawn." The Purchase Agreement lists a purchase price of $547,000.00, and required the entire transaction to close no later than October 30, 2002. Additionally, the Purchase Agreement provides that a deposit was to be made "upon acceptance of this agreement"; Mr. Franco deposited the $5,000.00 earnest money.
 {¶ 6} In addition, the Purchase Agreement was made subject to a number of contingencies, including, inter alia, an "Inspection/Property Addendum" ("Inspection Addendum"), and an "Addendum A." The Purchase Agreement indicates that the parties acknowledged that a general home inspection would be performed, at the Buyer's expense.[1] The Purchase Agreement itself, as approved by the parties, provided the following provision for property inspection:
"CONTRACTOR INSPECTION: This Agreement is contingent upon inspection of the property by a contractor(s) of Buyer's choice. If Buyer in good faith is not satisfied with such inspection(s) then Buyer must notify Seller of such within 10 days[2] of the date of this Agreement. In such event either Buyer or Seller may void this Agreement and upon the parties signing a mutual release all monies shall be promptly returned to Buyer. If Buyer does not inspect the property or does not notify Seller within the 14 day period, then any contingency pursuant to this paragraph is removed and the Buyer shall take the property in its present "AS IS" condition.
"If any of the contractors performing the inspections recommend additional more detailed inspections or additional inspections are required by the lender then the inspection period relating that specific inspection is extended from 14 days to 21 days.
"All inspections are to be performed by contractor(s) of Buyer's choice, regardless of which party is paying for the inspection(s). * * * Buyer is solely responsible for the inspection(s) content and accuracy. * * * Seller's willingness to make repairs does not in any way negate Buyer's right to void the Agreement."
 {¶ 7} The Inspection Addendum was signed by Mr. Franco on September 5, 2002, and signed by Kemppel Homes, Inc. on September 6, 2002, and further provides that Mr. Franco as the buyer would conduct a general home inspection through a qualified inspector, "within [ten] days from acceptance of this offer." The Inspection Addendum also set forth a "Waiver" regarding the results of such an inspection report:
"If the Buyer disapproves of the inspection report because of defects in the property, Buyer shall notify Seller in writing of the defects and provide a copy of the Inspection Report to the Seller prior to the expiration of the inspection period(s). Failure to have inspection completed, or to notify seller by written notice of any defects before expiration of the inspection period shall constitute a waiver of such defects, and buyer shall take the property" as is" with respect to such defects.
"* * *
"Buyer shall either 1) elect to cancel this agreement or 2) request that the seller repair or restore such defects. Seller shall have no obligation to repair any such items unless specifically agreed to in writing. If Seller, within 5 days after the expiration of each Inspection Period, agrees to correct the defect(s), then this agreement remains in full effect. If the seller(s) is unwilling to repair any defect, then Buyer shall have the right to cancel this agreement or approve the inspection report and accept the property in its present "as is" condition. If Buyer elects to cancel this agreement then upon signing of a mutual release by Seller and Buyer, the earnest money deposit shall be returned to the Buyer without any further liability between Seller and Buyer * * *."
 {¶ 8} Thereafter, the parties executed a "Multi-Purpose Addendum A" ("Addendum A"), which Mr. Franco signed on September 5, 2002, and Kay signed on September 6, 2002. Addendum A is a form recommended by the Akron Area Board of Realtors containing some boilerplate language. Addendum A, as executed by the parties, contains handwritten provisions, and specifies in the boilerplate language that the "additions, revisions, reservations, contingencies, and/or changes, * * * are a part of [the parties'] total agreement governing said sale[,]" and that the "A[ddendum] is considered part of subject [Purchase] Agreement as though fully written thereon."
 {¶ 9} The parties' provisions in Addendum A provide, inter alia, that, the Purchase Agreement was subject to Mr. Franco's attorney's review and acceptance, and also that Kemppel, at Kemppel's expense and to Mr. Franco's satisfaction, was to install a number of items in and around the home. Specifically, the following changes were requested: installation of a hydromatic backup sump pump; installation of a speed control for the ceiling fan in the family room; installation of a cealing fan and light kill with speed control in each bedroom; installation of shelving and rods in all closets and pantries; installation of missing mirrors, towel rods, toilet tissue holders in all bathrooms; installation of two garage door openers; installation of a sprinkler system around the house; grading and seeding of the backyard, installation of a deck with railings; and installation of a glass fireplace door in the family room.
 {¶ 10} Addendum A also provided that the Purchase Agreement was subject to a final walk through within five days prior to the title transfer for the house. The parties initialed and dated those portions of Addendum A that they approved, as well as signed the addendum. The parties do not contest any provisions of Addendum A on appeal. On or about September 12, 2002, the parties executed a "Multi-Purpose Addendum B" ("first Addendum B"), which deals with the realtor's commission. The parties do not contest anything in the first Addendum B.
 {¶ 11} On September 18, 2002, Mr. Franco's attorney prepared a letter requesting certain legal changes to the Purchase Agreement, which Kemppel Homes, Inc. accepted, by initialing the bottom of the letter on October 4, 2002. Of relevance to the dispute on appeal is a revision to Addendum A in this letter, which reads: "Subject to Buyer's approval of the condition of the property, including the improvements required by [this Addendum], during a final walk-through during the last five days prior to title transfer." The letter further stated that "[t]his change gives [the] Buyer the right to approve the work before committing to close." The parties do not dispute any portion of these revisions on appeal.
 {¶ 12} Thereafter, another Multi-Purpose Addendum B ("second Addendum B") was drafted, which contains wholly different terms from those contained in the first Addendum B.[3] It is the second Addendum B that is the basis for the parties' challenges on appeal. In the second Addendum B, Mr. Franco requested that approximately 30 changes to the property be made a part of the Purchase Agreement, and that "[r]elease of the home inspection is subject to the [items] being completed prior to title transfer at Builder's expense." Specifically, Mr. Franco requested that a number of repairs or changes be made to the property, including the installation of a separate water meter for the sprinkler system, the installation of cable and phone lines in some rooms of the house, sealing of the driveway, and repainting and restaining certain walls and fixtures.
 {¶ 13} Kemppel signed the second Addendum B on October 4, 2002, but did not accept all of the terms and conditions contained in the addendum. Particularly, Kemppel did not agree to add a separate water meter and new cable and phone lines, and crossed out and initialed their changes to the second Addendum B. Neither Mr. Franco's signature nor his initials appear on the second Addendum B.
 {¶ 14} In a letter dated October 11, 2002, Mr. Franco notified Kemppel that its response to the second Addendum B was "unsatisfactory[,]" that he "no longer wishe[d] to pursue purchase of the property, and is withdrawing any offer still outstanding[,]" and that "negotiations are terminated[.]" Mr. Franco also requested the return of the earnest money, but Kemppel refused to do so.
 {¶ 15} On November 15, 2002, Mr. Franco filed a complaint in the Akron Municipal Court against Kemppel, for declaratory judgment that the contract was terminated or was never properly entered into, as well as unjust enrichment for the earnest money that he deposited. On January 10, 2003, Kemppel filed an answer and counterclaim, asserting breach of contract and promissory estoppel claims. The case was transferred to the common pleas court when the claims exceeded the monetary jurisdictional limit of the municipal court.
 {¶ 16} On March 28, 2003, Mr. Franco filed a motion for summary judgment, asserting that negotiations between the parties had ended, and that an agreement was never reached. Mr. Franco also requested in his motion that Kemppel's breach of contract and promissory estoppel claims be dismissed. On August 7, 2003, Kemppel filed a response to Mr. Franco's motion for summary judgment, or in the alternative, motion for continuance and discovery pursuant to Civ.R. 56(F). In its brief, Kemppel argued that "there are genuine issues of material fact as to whether [Mr.] Franco's request for the water meter and cable and phone lines are property repairs within the scope of a home inspection or property improvements that are a masked attempt to re-negotiate and amend the Purchase Agreement after the fact."
 {¶ 17} On September 17, 2003, the trial court granted Mr. Franco's motion for summary judgment on his claim and on Kemppel's counterclaim for breach of contract and promissory estoppel. The court concluded that there was no valid contract, and that Mr. Franco was entitled to a return of his earnest money deposit. The court reasoned as follows:
"At no time did the parties in this case reach a point where the terms o the potential contract were definite and certain. Because there was no `meeting of the minds,' the parties were engaged in a series of offers and counteroffers. [Mr. Franco] refused the last counteroffer from [Kemppel] and the negotiations ended without the formation of a legally enforceable contract. * * * Having found no contract, and ordered the return of the earnest money deposit, the Court need not rule on [Mr. Franco's] claim for unjust enrichment. * * * [Kemppel] claim[s] they reasonably relied to their detriment on promises made by [Mr. Franco] to purchase the home. * * * In this case, the negotiations are evidenced by writings, but there is no written final contract, or memorandum thereof. Ohio's Ninth District has ruled that state courts should not apply the doctrine of promissory estoppel to statute of frauds cases involving real estate. [Kemppel's] counterclaim should be dismissed." (Citation omitted.)
The trial court also granted judgment in favor of Mr. Franco in the amount of $5,000.00, plus costs and interest from the date of judgment.[4] This appeal followed.
 {¶ 18} Kemppel timely appealed, asserting one assignment of error for review.
 II. Assignment of Error
"The trial court erred as a matter of law in granting summary judgment in favor of appellee on his claim for a declaratory judgment and against appellants on their counterclaim for breach of contract."
 {¶ 19} In its sole assignment of error, Kemppel contends that the trial court erred when it granted Mr. Franco's motion for summary judgment, and when it granted judgment in favor of Mr. Franco on Kemppel's counterclaim for breach of contract. We disagree.
 {¶ 20} An appellate court reviews a trial court's granting of summary judgment de novo, applying the same standard used by the trial court. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105; Klingshirn v. Westview Concrete Corp. (1996),113 Ohio App.3d 178, 180. Any doubt is to be resolved in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12. Pursuant to Civ.R. 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the non-moving party's claims. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of the motion. Id.
 {¶ 21} Once this burden is satisfied, the non-moving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Dresher,75 Ohio St.3d at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings, but must instead point to or submit some evidentiary material that shows that a genuine dispute over the material facts exists. Id. See, also, Henkle v.Henkle (1991), 75 Ohio App.3d 732, 735. In its review of a granting of summary judgment, an appellate court "review[s] the same evidentiary materials that were properly before the trial court at the time it ruled on the summary judgment motion." Am.Energy Servs., Inc. v. Lekan (1992), 75 Ohio App.3d 205, 208.
 {¶ 22} It is a basic tenet of contract law that to constitute a valid contract, both parties to a contract must assent to its terms; there must be a "meeting of the minds" of the parties with respect to the essential terms of the contract, which terms are also definite and certain. Technical Constr. Specialties v.Gerspacher (Apr. 28, 1999), 9th Dist. No. 2785-M, citingEpiscopal Retirement Homes, Inc. v. Ohio Dept. of Indus.Relations (1991), 61 Ohio St.3d 366, 369. The "meeting of the minds" requirement shows that the parties possess a "distinct and common intention which is communicated by each party to the other." Technical Constr. Specialties, supra, citing McCarthy,Lebit, Crystal Haiman Co., L.P.A. v. First Union Mgt., Inc.
(1993), 87 Ohio App.3d 613, 620.
 {¶ 23} In a transaction involving the sale of land, any such agreement is subject to the statute of frauds, and thus must be in writing and signed by the party to be charged with the agreement. See R.C. 1335.05. In an express contract, the meeting of the minds is manifested by an offer and an acceptance of the offer. Technical Constr. Specialties, supra, citing Legros v.Tarr (1989), 44 Ohio St.3d 1, 6.
 {¶ 24} In support of its assignment of error, Kemppel argues that the trial court improperly found that the second Addendum B was a counteroffer. Kemppel states that any items identified for repair by Mr. Franco had to be "defects," and that these requests were not "defects" within the meaning of the Purchase Agreement, but instead constituted "improvements" that are not properly remediable under the Inspection Addendum. We observe, however, that neither the Purchase Agreement nor the Inspection Addendum provides provisions detailing the specifics of the inspection; nor does the documentation contain any language proscribing requests for changes to the property other than defects. Moreover, these documents do not explain what constitutes a "defect" within the context of this particular Purchase Agreement. Additionally, the revised language in Addendum A indicates that the Purchase Agreement is subject to Mr. Franco's approval of the "condition of this property[.]" The language is at best indefinite, uncertain, and ambiguous. It is apparent from the record that the parties did not reach a mutual understanding as to the protocol governing certain changes to the property.
 {¶ 25} Kemppel asserts that Mr. Franco had the opportunity to request such additional changes prior to signing the Purchase Agreement, and that the proper time to request these changes had come and gone. However, the Purchase Agreement itself does not set forth a time constraint for such negotiations, with the exception of the October 30, 2002 closing date. Kemppel maintains that the second Addendum B is not part of the main agreement between the parties, and that it is "nothing more than [a] post-contract written request for [Kemppel] to perform certain repairs in release of the inspection condition." However, this contention directly contradicts the language in the addenda which specifically provides that the provisions in such addendums are to be considered part of the Purchase Agreement as if written therein.
 {¶ 26} In its brief on appeal, Kemppel cite Miles v. RealtyOne (May 9, 1996), 8th Dist. No. 69506, for the proposition that the amendment of some details of a contract amounts to a modification of the original contract, leaving the original contract in force as modified. In Miles, the parties entered into a purchase agreement for the sale of a residential home, which was made contingent on the seller securing financing to build a new home by a certain date. Thereafter, both parties signed an amendment that extended the date for the buyer to obtain financing, as well as extended the date for closing, and provided, "`all other terms and conditions of said Purchase Agreement remain in full force and effect.'" Miles, supra. Unlike the parties in the instant case, the parties in Miles
did not contest the fact that they had originally entered into an enforceable contract; rather, the parties disagreed over whether, by signing the amendment, the parties entered into a new contract.
 {¶ 27} The instant case is further distinguishable fromMiles in that the parties in the instant case could not agree on what the condition of the property should be at the time of sale, and the Purchase Agreement was devoid of any language that could resolve this issue for the parties; the parties' ability to agree on the features of the underlying subject matter of the transaction was wholly impaired. The contract in Miles, on the other hand, merely extended the timeframe within which to obtain financing, and did not disturb the contract's "general purpose[.]" Miles, supra.
 {¶ 28} Kemppel also urges us to conclude that there was an enforceable contract in this case, pursuant to the decision inBennett v. Fier (July 2, 1998), 2nd Dist. No. 97-CA-116. InBennett, the buyer in a real estate contract contended that he was not obligated to perform under the contract because the seller had failed to repair certain defects within the time prescribed in the contract. The appellate court concluded that a later agreement between the parties extended the time period for repair, and that therefore the buyer was still obligated to perform under the contract. The property addendum in Bennett,
however, provided for more definite and certain provisions than does the Inspection Addendum in the instant case. For example, the addendum in Bennett provided for more specific provisions regarding what constitutes a defect. However, in the instant case, the facts indicate that the parties did not reach a final agreement as to all the essential terms to the Purchase Agreement.
 {¶ 29} Kemppel also voices a belief that the contractual conditions contained in the contract, namely, Addendum A and Addendum B, should be deemed conditions subsequent to the formation of this purported contract. Kemppel contends that the parties formed a valid and binding contract containing two conditions subsequent, and that Mr. Franco breached this contract. We observe that Kemppel did not raise this argument before the trial court. "Issues not raised and tried in the trial court cannot be raised for the first time on appeal." Holman v.Grandview Hosp. Med. Ctr. (1987), 37 Ohio App.3d 151, 157. Kemppel's failure to raise this issue before the trial court operates as a waiver of their right to assert it for the first time on appeal. Hypabyssal, Ltd. v. Akron Hous. Appeals Bd.
(Nov. 22, 2000), 9th Dist. No. 20000, citing State ex rel.Zollner v. Indus. Comm. (1993), 66 Ohio St.3d 276, 278. Since Kemppel has raised this issue for the first time on appeal, this Court is precluded from addressing it.
 {¶ 30} We must agree with the trial court in this case, that, the parties were engaged in a series of negotiations that culminated in Mr. Franco's rejection of Kemppel's counteroffer on the second Addendum B; and that the terms of the potential contract were not definite and certain at any point in the negotiations. Thus, this Court must conclude that Mr. Franco and Kemppel did not possess a "`distinct and common intention which [was] communicated by each party to the other.'" See TechnicalConstr. Specialties, supra, quoting McCarthy, Lebit, Crystal Haiman Co., 87 Ohio App.3d at 620. As there was no manifestation of the parties' meeting of the minds with respect to this real estate transaction, a legally enforceable agreement could not exist.
 {¶ 31} Based upon the foregoing, we find that Kemppel did not meet their burden of demonstrating that a genuine dispute over material facts remains in this case. See Burt,75 Ohio St.3d at 293. Based upon a thorough review of the record, and even viewing the evidence most strongly in favor of Kemppel, we find that no genuine issue of material fact remains, and that Mr. Franco was entitled to judgment as a matter of law. See Temple,50 Ohio St.2d at 327. Therefore, we conclude that the trial court did not err when it granted Mr. Franco's motion for summary judgment. Based upon this determination, we need not address the trial court's dismissal of Kemppel's breach of contract counterclaim, as this issue is now rendered moot.
 {¶ 32} Accordingly, Kemppel's sole assignment of error is overruled.
 III. {¶ 33} Kemppel's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed
Judgment affirmed.
Whitmore, J. concurs.
[1] We note that the record does not contain any evidence that indicates that Mr. Franco actually had a contractor inspect the property; nor does a copy of an inspection report appear in the record.
[2] The boilerplate language of the purchase agreement originally contained a 14-day notification period. However, the parties changed this time period to ten days, as evidenced by a change initialed by both parties.
[3] We also note that the second Addendum B refers to a "[c]ontract dated September 12, 2002," which we assume refers to the same Purchase Agreement signed earlier.
[4] We note that the trial court did not expressly rule on Kemppel's Civ.R. 56(F) motion for continuance to conduct discovery in this case. However, we have previously held that "when a trial court fails to rule upon a [pretrial] motion, it will be presumed that it was overruled." Georgeoff v. O'Brien
(1995), 105 Ohio App.3d 373, 378. See, also, State ex rel. The VCos. v. Marshall (1998), 81 Ohio St.3d 467, 469. Thus, the trial court's failure to rule on Kemppel's Civ.R. 56(F) motion in this case constituted a denial of the motion. Furthermore, neither party raises a challenge to this motion on appeal.