DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Plaintiff-Appellant, James Yeager Homebuilders, Inc. ("Yeager"), appeals from the trial court's order granting summary judgment in favor of Defendants-Appellees, John and Lisa Foss ("the Fosses"). This Court affirms.
 I {¶ 2} The Fosses initially contacted Yeager for the purpose of having Yeager design and build them a custom home. After several meetings between the Fosses and Yeager's owner, James Yeager, Yeager presented the Fosses with a "New Home Construction Proposal" ("the Proposal") on August 30, 2005. The *Page 2 
Proposal included the base price of a new home as well as the complete price. The Proposal also included the statement that, "[t]his offer may be withdrawn by the builder if not accepted within twenty days of receipt or 9/19/2005." The Fosses never signed the Proposal.
 {¶ 3} The following day Lisa Foss met with James Yeager and paid him a non-refundable $5,000 deposit. The "Receipt of Down Payment" that she signed on the same day indicated that the $5,000 applied to the following items:
 "Builders, Fall 2005 construction scheduling, (in process)
 "One original custom home design, (completed)
 "One drawing/sketch layout, (completed)
 "All necessary working drawings, (in process)
 "One site improvement plan, (in process)
 "One set of final blueprints for the owner and lender each, (in process)
 "One job specification/construction agreement (in process)"
A later document entitled "Home Specifications" reiterated that Yeager would use the $5,000 "to pay for any costs, of estimating design work, drawings and or blue print expenses incurred."
 {¶ 4} Over the next few months, the parties continued to negotiate over the design for the home and Yeager presented the Fosses with three additional "New Home Construction Proposals]" dated October 4, 2005, October 8, 2005, and October 15, 2005 respectively. Each proposal contained a different estimated *Page 3 
price for the home. Once again, the Fosses never signed any of these additional proposals. On October 17, 2005, Yeager telephoned the Fosses because they had not contacted him for several days. The Fosses informed Yeager that they had hired another builder and that they were no longer interested in having Yeager build their home.
 {¶ 5} Yeager brought suit against the Fosses for breach of contract on August 11, 2006. On May 30, 2007, the Fosses filed their motion for summary judgment. The trial court granted the Fosses' motion on August 21, 2007, finding that the parties never formed a valid contract because there was no meeting of the minds. Yeager has appealed from the court's ruling, raising one assignment of error.
 II Assignment of Error "THE COURT ERRED IN FINDING THAT THERE WAS NO `MEETING OF THE MINDS' SUFFICIENT TO SUPPORT THE FORMATION OF AN ENFORCEABLE CONTRACT."
 {¶ 6} Yeager argues that the trial court erred in granting the Fosses' motion for summary judgment because the parties had a valid contract. Specifically, Yeager argues that: (1) Lisa Foss's payment of $5,000 and signature on the "Receipt of Down Payment" solidified the Proposal and created a binding contract, and (2) even if the Proposal lacked one or more necessary contractual terms it was still an enforceable "agreement to agree." We disagree. *Page 4 
 {¶ 7} This Court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12.
 {¶ 8} Pursuant to Civ.R. 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated; the moving party is entitled to judgment as a matter of law; and it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v.Henkle (1991), 75 Ohio App.3d 732, 735. Moreover, a nonmoving party cannot create a material dispute of fact simply by *Page 5 
producing an affidavit which contains conclusory allegations and fails to set forth any facts that contradict the moving party's factual assertions. Ina v. George Fraam Sons, Inc. (May 25, 1994), 9th Dist. No. 93CA005646, at *1.
 {¶ 9} The elements necessary to form a contract "`include an offer, acceptance, contractual capacity, consideration, * * * a manifestation of mutual assent and legality of object and of consideration.'"Kostelnik v. Helper, 96 Ohio St.3d 1, 2002-Ohio-2985, at ¶ 16, quotingPerlmuter Printing Co. v. Strome, Inc. (N.D.Ohio 1976), 436 F.Supp. 409,414. To constitute a valid contract, both parties to a contract must assent to its terms; there must be a "meeting of the minds" of the parties with respect to the essential terms of the contract, which terms are also definite and certain. Franco v. Kemppel Homes, Inc., 9th Dist. No. 21769, 2004-Ohio-2663, at ¶ 22, citing Technical Constr. Specialtiesv. Gerspacher (Apr. 28, 1999), 9th Dist. No. 2785-M, at *1. The "meeting of the minds" requirement shows that the parties possess a "distinct and common intention which is communicated by each party to the other."Technical Constr. Specialties, supra, quoting McCarthy, Lebit, Crystal Haiman Co., L.P.A. v. First Union Mgt, Inc. (1993),87 Ohio App.3d 613, 620. Finally, any ambiguity in contractual terms will be construed against the drafter. McKay Machine Co. v. Rodman (1967),11 Ohio St.2d 77, 80.
 {¶ 10} Yeager relies upon the Proposal and the "Receipt of Down Payment" that Lisa Foss signed on August 31, 2005 to argue that the parties had a contract. *Page 6 
Yeager admits that neither document by itself constituted a written contract between the parties. Yeager further admits that the Fosses never signed the Proposal. Yet, it claims that the Proposal contained all of the essential terms of a contract and that both parties understood that by signing the "Receipt of Down Payment" and paying the $5,000 to Yeager they were entering into a binding contract. Based on the record, we cannot agree that both parties understood that they had a binding contract for Yeager to build the Fosses a custom home.
 {¶ 11} First, the "Receipt of Down Payment" that Lisa Foss signed was ambiguous at best. The document uses the terms "down payment" and "deposit" interchangeably to refer to the $5,000 that the Fosses paid to Yeager. Certain terms in the document suggest that the parties meant the $5,000 to be the first payment that the Fosses made towards the total price of a home building contract. For instance, the document provides that the $5,000 "will be applied toward the construction of [the Fosses] new home[.]" However, other terms in the document suggest that the parties meant the $5,000 to be a payment for designs and other specified preliminary items. First instance, the document provides that the $5,000 applies to drawings, sketches, plans, a "custom home design," and "Fall 2005 construction scheduling." Importantly, the document also provides that the $5,000 applies to one "construction agreement (in process)." We find this last item particularly damning to Yeager's argument because it suggests that the payment of $5,000 is partially to compensate Yeager for drafting the agreement that the *Page 7 
parties did not yet have. Even if this is not the case, it is clear that the terms in Yeager's document are capable of having multiple interpretations. Accordingly, the document is ambiguous at best. Because we must construe the document against Yeager, we find no merit in Yeager's assertion that the Fosses meant to enter into a valid contract when they paid Yeager the $5,000 and Lisa Foss signed the "Receipt of Down Payment." See id.
 {¶ 12} Furthermore, Yeager's other actions detract from its assertion that it believed the parties entered into a valid contract on August 31, 2005. Yeager provided the Fosses with three more proposals dated October 4, 2005, October 8, 2005, and October 15, 2005. Each additional "New Home Construction Proposal" contained different building specifications and correspondingly different price terms. These variations hardly bode in favor of Yeager's argument that the parties had a binding contract containing definite and certain terms as of August 31, 2005. SeeFranco at ¶ 22.
 {¶ 13} Yeager also presented the Fosses with a "Home Specifications and Agreement" on October 4, 2005. That document contained thirty-two separate provisions including, but not limited to: conditions, insurance, site preparation, excavations, windows, insulation, interior doors, interior woodwork, finish floors, stairs, closets, garage door, kitchen, heating A/C, electric, painting, clean up, and a final section entitled "Agreement." The "Agreement" provision provided, in relevant part, that: *Page 8 
 "THIS AGREEMENT made in Stow Ohio, and entered into this 5th day of October 2005, by and between * * * YEAGER * * * and John Charles and Lisa Ann Foss * * * WITNESSETH THAT:
 "In consideration of the mutual promises and agreements of the parties herein contained, [Yeager] does hereby agree to build for [the Fosses], in a worklike manner, a TWO story residential home[.]"
The above quoted language is inconsistent with Yeager's position that the parties already had formed a valid contract prior to October 5, 2005. Had the parties already entered into a binding contract regarding the building of the home, there would be no reason for the Fosses to enter into and sign the document entitled "Home Specifications and Agreement." Thus, the record reflects that neither the Fosses nor Yeager truly believed that they had a binding building contract.
 {¶ 14} In support of Yeager's brief in opposition to summary judgment, Yeager attached a copy of the Proposal, the "Receipt of Down Payment," and the sworn affidavit of James Yeager, which provided: "At the meeting o[n] August 30, 2005, the Fosses accepted [Yeager's] offer to construct a new home[.]" For the reasons we set forth above, neither the Proposal, nor the "Receipt of Down Payment" evidence the existence of a binding building contract. As to the affidavit, Yeager failed to include any factual support beyond his conclusory allegation that the Fosses accepted Yeager's offer on August 30, 2005. See Ina, supra (holding that a factually unsupported conclusory allegation does not create a genuine issue of material fact). The record does not support that allegation. Indeed, Yeager seems to acknowledge this on appeal because in its brief Yeager *Page 9 
argues that, "there can be no question that the Fosses accepted the terms of this proposal on August 31, 200[5]." The trial court determined that the Fosses' payment of $5,000 constituted an agreement for Yeager to design, but not to build, a home for the Fosses. We agree with the court's conclusion that Yeager failed to demonstrate a genuine issue of material fact with regard to the existence of a home building contract. Thus, the trial court did not err in granting the Fosses' motion for summary judgment.
 {¶ 15} As to Yeager's argument that the Proposal constituted an "agreement to agree," we observe that Yeager did not raise this argument before the trial court. "Issues not raised and tried in the trial court cannot be raised for the first time on appeal." Holman v. GrandviewHosp. Med. Ctr. (1987), 37 Ohio App.3d 151, 157. Yeager's failure to raise this argument before the trial court operates as a waiver of its right to assert it for the first time on appeal. Hypabyssal, Ltd. v.Akron Hous. Appeals Bd. (Nov. 22, 2000), 9th Dist. No. 20000, at *2, citing State ex rel. Zollner v. Indus. Comm. (1993), 66 Ohio St.3d 276,278. Our role on appeal is to review a trial court's decision, not to usurp its function by reaching an issue that the trial court had no opportunity to address. Allen v. Bennett, 9th Dist. Nos. 23570, 23573, 23576, 2007-Ohio-5411, at ¶ 21. Thus, we are precluded from considering Yeager's argument that the Proposal was an "agreement to agree." Yeager's sole assignment of error lacks merit. *Page 10 
 III {¶ 16} Yeager's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
 Costs taxed to Appellant. *Page 11 
 CARR, P. J. SLABY, J. CONCUR *Page 1