**KIRCH, Appellant,**

v.

**OHIO BUREAU OF WORKERS' COMPENSATION, Appellee.**

[Cite as *Kirch v. Ohio Bur. of Workers' Comp.*, 154 Ohio App.3d 651, 2003-Ohio-5211.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 02AP–1417.

Decided Sept. 30, 2003.

</div>

652

Abroms Law Offices and Hillard M. Abroms, for appellant.

Jim Petro, Attorney General, and Jack W. Decker, Assistant Attorney General, for appellee.

PEGGY BRYANT, Judge.

{¶ 1} Plaintiff-appellant, Steven W. Kirch, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment to defendant-appellee, Ohio Bureau of Workers' Compensation, and denying plaintiff's motion for summary judgment on plaintiff's complaint seeking declaratory judg-

ment and injunctive relief against defendant, his former employer. Plaintiff's complaint is based on a claim that he had a right under R.C. 9.84 to be represented by counsel when his employer asked him questions at work. On appeal, plaintiff assigns a single error:

"The decision of the trial court is not supported by the evidence and is contrary to law."

{¶ 2} Because the R.C. 9.84 right to counsel was not implicated in plaintiff's interview with bureau personnel, we affirm.

{¶ 3} Plaintiff was employed as a computer consultant in the bureau's Information Technology ("IT") Division of the Network Department. Throughout his employment, plaintiff was a member of a collective bargaining unit, represented by the Ohio Civil Service Employees Association ("OCSEA") and subject to a collective bargaining agreement. In June 1999, plaintiff admitted to the bureau's "Internal Affairs" ("IA") department that he had been using the bureau's computer equipment in his private internet business. Plaintiff was discharged, but in August 1999 he entered a "last chance" agreement with the bureau. The agreement reduced plaintiff's discharge to a 30–day suspension, but it further stipulated that "any violation" of the bureau's work rules or lack of good behavior would result in termination of plaintiff's employment.

{¶ 4} On April 3, 2000, one of plaintiff's coworkers provided a statement to the bureau regarding an incident involving plaintiff that had occurred in December 1999. Specifically, Michelle Brown stated that plaintiff had sought a private meeting with her, in which he told her that he had used his computer at the bureau to access the bureau's IA files. According to Brown, plaintiff said that he would deny the conversation if asked, but he wanted her to know that "he was in the IA files" to see what he could find "about any activities IA was pursuing in his case." He informed Brown that he had come across information that Brown and her husband, also an employee, were being investigated, and he wanted her to know so that "no one else had to go through" what he had experienced in IA's prior investigation of him. Brown further recounted to the bureau that, on one occasion, plaintiff complained about certain employees' ability to track who went into certain files, and he tried to use her computer to change the file-auditing log.

{¶ 5} The day following Brown's statement, one of the IT managers, Leo Genders, approached plaintiff at his desk. According to plaintiff's deposition, Genders asked plaintiff to stop working and come with him. Genders and plaintiff went to a conference room, where an employee from the labor relations or human resources office, Samantha Coon, joined them.

{¶ 6} Plaintiff was told that the meeting was an "investigatory interview." Genders gave plaintiff a written explanation stating that the purpose of the

meeting was "to gather facts regarding a situation that has come to our attention," and that the interview "may lead to discipline." The sheet further explained that Genders "expect[s] you to answer the questions honestly and accurately. Please understand that my expectation that you will answer the questions honestly and accurately is a direct order. Failure to comply with this direct order could lead to discipline, in addition to the discipline you already may face."

{¶ 7} Plaintiff signed the paper, acknowledging that he had been advised of "the disciplinary nature of this meeting" and that he had received a direct order to answer the questions honestly and accurately. In response to the question whether he had "any requests at this time," plaintiff wrote: "No, I'd rather not have the union present. The last time they hurt me more than they helped."

{¶ 8} Genders asked plaintiff about his job duties, and then inquired whether plaintiff had ever accessed a file or files on the shared drive for purposes unrelated to his work. Genders also questioned plaintiff about his knowledge of network tools or procedures that would permit the bureau to track file access, and he questioned plaintiff about security, file permissions, and file access. Plaintiff denied gaining access to IA files.

{¶ 9} After the interview on April 4, 2000, plaintiff was placed on administrative leave, and he left the building. The next day, the bureau sent plaintiff a letter stating that plaintiff's removal from employment was being contemplated. The letter notified plaintiff that he was charged with several listed infractions, and it stated that a "predisciplinary meeting" had been scheduled "to provide you with a chance to tell your side of the story" and to rebut charges that plaintiff had used his position as an IT employee to gain access to confidential files for purposes unrelated to his work.

{¶ 10} Plaintiff filed an application for disability leave and stated that he was unable to participate in the June 2000 predisciplinary meeting on the advice of his psychiatrist. Plaintiff's attorneys attended the meeting, along with his union steward. On June 12, 2000, the bureau notified plaintiff that his employment was terminated as of June 14, 2000. Plaintiff filed a grievance, and hearings began under the collective bargaining agreement.

{¶ 11} In August 2000, plaintiff filed an action for declaratory judgment and injunctive relief against the bureau. In it, plaintiff sought a declaration that the April 4, 2000 interview with Leo Genders and Samantha Coon was an "administrative or executive proceeding or investigation" at which he was "appearing as a witness" within the meaning of R.C. 9.84, and that, accordingly, the bureau was obliged to advise him of his right to counsel before he was interrogated.

{¶ 12} Both parties filed motions for summary judgment. In a decision filed October 28, 2002, the trial court granted the bureau's motion and denied plaintiff's motion. Applying the language of R.C. 9.84, the trial court concluded that the April 2000 interview lacked the requisite formality to constitute an "administrative or executive proceeding or investigation" and that plaintiff was not a "witness."

{¶ 13} In addition, the court addressed the bureau's alternative argument that even if R.C. 9.84 generally were applicable to the type of interview plaintiff experienced, statutory and contractual provisions specifically governed plaintiff's employment and, in this instance, superceded R.C. 9.84. Plaintiff disagreed, contending that R.C. 9.84 takes precedence because it grants a "civil right." The trial court rejected plaintiff's argument, ruling that R.C. 9.84 did not grant a civil right.

{¶ 14} In support of his single assignment of error on appeal, plaintiff sets forth four assertions: that the April 2000 interview was an "administrative or executive proceeding or investigation" within the meaning of R.C. 9.84; that he was a "witness" within the meaning of the statute; that R.C. 9.84 does not conflict with the collective bargaining agreement; and that even if R.C. 9.84 conflicts with the bargaining agreement, it grants a civil right and therefore takes precedence over the bargaining agreement.

{¶ 15} R.C. 9.84 provides as follows:

"Any person appearing as a witness before any public official, department, board, bureau, commission, agency, or representative thereof, in any *administrative or executive proceeding or investigation*, public or private, if he so requests, shall be permitted to be accompanied, represented, and advised by an attorney, whose participation in the hearing shall be limited to the protection of the rights of the witness, and who may not examine or cross-examine witnesses, and *the witness shall be advised of his right to counsel* before he is interrogated. This section shall not apply to proceedings before a grand jury." (Emphasis added.)

{¶ 16} The Supreme Court's opinion in *In re Civ. Serv. Charges & Specs. Against Piper* (2000), 88 Ohio St.3d 308, 725 N.E.2d 659, addressed whether a person was appearing "as a witness" under R.C. 9.84, and it rejected the proposition that a person is not appearing "as a witness" unless he or she is testifying under oath. The Supreme Court instead agreed with this court's rationale in *State FOP Grand Lodge No. 1 v. State* (Dec. 31, 1981), Franklin App. No. 80AP–744, 1981 WL 3707, where we concluded that the term "witness" in R.C. 9.84 is used in its broadest sense and should not be interpreted to exclude a person who is also a party.

{¶ 17} The majority in *Piper*, which was decided on April 5, 2000, did not address the meaning of other words or phrases in R.C. 9.84, but in a concurring opinion three justices joined to clarify the meaning of the term "administrative or executive proceeding or investigation." The concurring opinion made explicit what the majority opinion suggested: that appearing as a "witness" is not sufficient by itself to trigger the right to counsel under R.C. 9.84, because one must also be appearing in an administrative or executive proceeding or investigation for the statute to apply. *Piper*, 88 Ohio St.3d at 312, 725 N.E.2d 659. In the concurring opinion, the justices concluded that an informal interview does not trigger a right to counsel under R.C. 9.84 and that the benefits of the statute are triggered only where the circumstances demonstrate "the requisite formality" that distinguishes an administrative or executive proceeding or investigation from an informal interview.

{¶ 18} In reaching that conclusion, the concurring justices observed that the "level of formality in any proceeding or investigation is a function of the rules applicable to the manner in which the proceeding or investigation is conducted." Id. Reviewing the record in *Piper*, they noted a number of factors that reflected the requisite formality.

{¶ 19} Initially, the record showed that the inquiry was an "official" internal investigation conducted by the IA department of a police department. In addition, the police department had administrative rules providing that the subject of an administrative investigation could be required to participate in a videotaping of the questioning when necessary. Further, the police department's rules provided that the subject of an IA administrative investigation must be given formal notice of the interview at least 24 hours before the interview and formal notice of the right to representation. Similarly, the collective bargaining agreement required that the city give the person at least 24 hours' notice of such questioning and formally inform the subject of his right to representation.

{¶ 20} Moreover, the subject of interrogation in *Piper* was given a Garrity Warning, advising that he was being questioned as part of an official investigation and that a refusal to answer would be cause for termination of employment. The subject was warned that any statements he made could be used against him in disciplinary hearings but could not be used against him in any criminal proceedings. Id. at 309, 725 N.E.2d 659.

{¶ 21} Lastly, not only was the inquiry in *Piper* a videotaped questioning resulting in a formal record of the inquiry, but the officer under investigation protested that he wanted his attorney, who could not attend on short notice, present at the videotaped questioning. After a disciplinary hearing, the officer was discharged for insubordination based solely on his refusal to participate without his attorney. The concurring justices concluded that the record incontro-

vertibly satisfied "the requirement of formality contemplated by R.C. 9.84." Id. at 313, 725 N.E.2d 659. Although *Piper* established that an oath is not necessary for the person to be deemed a witness within the meaning of R.C. 9.84, the administration of an oath nonetheless is an indicia of formality that a court could consider in determining whether an inquiry had the requisite level of formality to be deemed an executive or administrative proceeding or investigation.

{¶ 22} Similarly, in *FOP,* which involved questioning of State Highway Patrol employees during internal investigative disciplinary proceedings, this court noted that the Highway Patrol had promulgated a written procedure that provided for a "charged" employee to appear and be "examined" at a "hearing." In that case, a formal "proceeding or investigation," within the meaning of R.C. 9.84, was deemed to have occurred where charges had been made and the party was being questioned at an administrative hearing.

{¶ 23} By contrast, in *Erb v. Landreth* (Dec. 2, 1985), Butler App. No. CA8505–049, 1985 WL 3973, two police officers were called in for separate meetings with a superior officer regarding compliance with departmental policy for proper searches of persons in custody. Both alleged that their request to have counsel present was denied. Subsequently, the officers were suspended for violating the policy for searching persons in custody.

{¶ 24} The court of appeals in *Erb* determined that no administrative or executive proceeding or investigation had occurred, as the officers "simply were called into appellee's office for meetings concerning their activities" as employees. Id. The court concluded this despite procedures and rules that the city was obliged to follow in suspending or removing an officer from employment, including a (1) detailed procedure for notifying the officer of the suspension or removal and the required contents of the notice, (2) a city ordinance providing a right to a postsuspension hearing, and (3) an employee's right to appeal the suspension to the city's civil service commission. Based on all the circumstances, the court of appeals affirmed the trial court's ruling that neither officer had been called in to answer questions in an administrative or executive proceeding or investigation and that accordingly, R.C. 9.84 did not apply.

{¶ 25} In the present action, the evidence is insufficient to establish that the level of formality necessary for R.C. 9.84 to apply occurred. On April 3, 2000, Michelle Brown informed the bureau that plaintiff had been using his computer at the bureau to gain access to confidential IA files. On the following day, a manager in the IT division, who was not a member of the IA office, called plaintiff in for a meeting to address whether he had used his IT capacities to gain access to confidential files that his duties in IT did not require.

{¶ 26} The record includes no evidence that the bureau had initiated an IA investigation to determine whether plaintiff had engaged in misconduct by using his IT capabilities to enter files without authority or permission. As to the matter for which he was discharged in 2000, plaintiff himself admitted that he had never had contact with anyone who worked with IA.

{¶ 27} Moreover, even if the questioning in April 2000 triggered a contractual right to have the union steward present, it did not rise to the level of a proceeding or investigation within the meaning of R.C. 9.84. In contrast to *Piper*, no court reporter, electronic recording device, or polygraph equipment was present, and no official internal investigation took place. See *Piper*, 88 Ohio St.3d at 309, 725 N.E.2d 659. Moreover, unlike *Piper*, no hearing or adjudication took place until the June predisciplinary meeting, at which plaintiff's attorneys appeared on his behalf. Rather, the facts here are more like those in *Erb*, where an employee was called in for an informal interview to gain preliminary information and responses concerning the employee's possibly violating a departmental policy.

{¶ 28} Because the April 2000 interview lacked the level of formality to trigger the application of R.C. 9.84, we find no error in the trial court's ruling that no executive or administrative proceeding or investigation occurred within the meaning of R.C. 9.84 and, therefore, no right to have an attorney present arose.

{¶ 29} As a result, the question of whether plaintiff was appearing as a witness is moot. In addition, because R.C. 9.84 does not apply, whether R.C. 9.84 conflicts with the collective bargaining agreement also is moot. Likewise, the question of whether R.C. 9.84 is a statute that grants a civil right need not be addressed.

{¶ 30} Accordingly, we overrule plaintiff's single assignment of error. We affirm the judgment of the trial court on the grounds that it correctly determined the April 2000 interview was not a proceeding or investigation within the meaning of R.C. 9.84.

Judgment affirmed.

PETREE, P.J., and BROWN, J., concur.