DECISION
{¶ 1} In this original action, relator, Stasi L. Bonham, requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which terminated relator's temporary total disability ("TTD") compensation as of December 21, 2001, and declaring that any TTD compensation paid after that date had been overpaid as a result of fraudulent activity,[1] and ordering the commission to find that relator's activities did not constitute work, and that the TTD compensation paid after December 21, 2001, had been properly paid.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(D) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate examined the evidence and issued a decision (attached as Appendix A), including findings of fact and conclusions of law. Therein, the magistrate concluded that the commission did not abuse its discretion when it found relator had been overpaid TTD compensation as a result of fraudulent activity, and recommended that this court deny relator's request for a writ of mandamus.
 {¶ 3} Relator has filed objections to the magistrate's decision as follows:
THE MAGISTRATE ERRED BY DISREGARDING MS. BONHAM'S CONTENTION THAT THE BUREAU OF WORKERS' COMPENSATION SPECIAL INVESTIGATION UNIT VIOLATED DISCIPLINARY RULES OF THE OHIO CODE OF PROFESSIONAL RESPONSIBILITY.
THE MAGISTRATE ERRED BY FINDING OHIO REVISED CODE SECTION 9.84
DOES NOT APPLY TO THE INTERROGATION OF MS. BONHAM BY THE BUREAU'S INVESTIGATORS.
THE MAGISTRATE ERRED BY FINDING MS. BONHAM'S ACTIVITIES CONSTITUTED "WORK ACTIVITIES."
 {¶ 4} The issues raised by relator in her objections were argued before the magistrate, and, thus, in the objections, relator essentially re-argues the same points addressed in the magistrate's decision. For the reasons set forth in the magistrate's decision, we do not find relator's objections to be well-taken.
 {¶ 5} Following an independent review of the matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, relator's objections to the magistrate's decision are overruled, and we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. Thus, in accordance with the magistrate's decision, we deny relator's requested writ of mandamus.
Objections overruled; writ of mandamus denied.
Bryant and Sadler, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Stasi L. Bonham, :
Relator, : No. 06AP-85 v. :
(REGULAR CALENDAR) Industrial Commission of Ohio et al., :
Respondents. :
 MAGISTRATE'S DECISION Rendered on August 16, 2006 Philip J. Fulton Law Office, Allison A. Clark, and David B.Barnhart, for relator.
Jim Petro, Attorney General, and Dennis H. Behm, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 6} Relator, Stasi L. Bonham, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission") to vacate its order which terminated relator's temporary total disability ("TTD") compensation as of December 21, 2001 and declaring that any TTD compensation paid after that date had been overpaid as a result of relator's fraudulent activity (based upon a finding that relator was working while receiving TTD compensation), and ordering the commission to find that relator's activities did not constitute work and that the TTD compensation paid after December 21, 2001, had been properly paid.
Findings of Fact:
 {¶ 7} 1. Relator sustained a work-related injury on June 12, 2001, and her claim has been allowed for: SPRAIN LUMBOSACRAL; CONTUSION OF LEFT WRIST; CONTUSION OF LEFT ELBOW; HERNIATED NUCLEUS PULPOSUS L4-5.
 {¶ 8} 2. Relator's treating physician, Richard Donnini, D.O., completed C-84 forms certifying relator as being temporarily and totally disabled from June 19, 2001 through July 8, 2003. Each C-84 was similar in that each noted objectively that relator suffered a loss of sensation, joint pain, numbness, tenderness, and muscle spasms. Further, the C-84's were similar in that they noted subjectively that relator was experiencing lower back pain, wrist pain, numbing and tingling in her right foot.
 {¶ 9} 3. TTD compensation was awarded to relator based upon Dr. Donnini's C-84's.
 {¶ 10} 4. The Bureau of Workers' Compensation ("BWC") Special Investigation Unit received a telephone call informing them that relator was working.
 {¶ 11} 5. BWC agents pursued an investigation which yielded the following relevant information: a sign outside relator's front yard was seen indicating that "soap" and "fresh eggs" were for sale; agents stopped at relator's residence and relator informed them that she had chickens on her farm and their eggs were for sale; relator also told the agents that she had a business selling homemade soaps and lotions at craft shows; relator provided the agents with her business card "Bonham's Homemade Soaps;" over the telephone, relator later informed the agents that she had just opened a permanent booth at "Caesar's Creek Flea Market" where she sold soaps, lotions, bath salts, and bath fizzies on Saturdays and Sundays; relator also stated that she teaches private and/or group classes for $15 per person; relator indicated that she began making her products as Christmas presents for her family and that her "hobby" had grown from there; surveillance of relator's booth at the Caesar's Creek Flea Market revealed that relator makes the products at home in her kitchen and sells them; relator indicated that she was interested in developing a line of products for men and that she shipped products to a customer who had moved to New York; relator answered customers' questions and sold products while the agents were there; the agents returned on a Sunday and relator's daughter was there; relator's daughter indicated that relator works at a Bingo Hall on Sundays; she also informed the agents that it takes her mother approximately two hours to make a batch of soap and that each batch of soap yields ten bars of soap; relator also sold products to the agents; the agents discovered that relator sells products over the internet on E-Bay under the following account: User ID-FarmLady 123 belongs to Stasi Bonham, opened 1-29-02; after the agents identified themselves, relator indicated that she had not worked since her date of injury and that the crafts she makes are nothing more than a hobby which has grown; relator also indicated that she does not make any real profit from selling her products and that any money she makes goes back into the business.
 {¶ 12} 6. As a result of the investigation, the BWC filed a motion requesting that relator's TTD compensation be terminated as of December 21, 2001 and requested that the commission find fraud.
 {¶ 13} 7. The BWC's motion was heard before a District Hearing Officer ("DHO") on February 25, 2004. The DHO determined that relator had been overpaid TTD compensation from December 21, 2001 to the present based upon fraudulent activity where she was working while continuing to receive TTD compensation. The DHO concluded that relator owns and operates her own business of making and selling homemade soaps, lotions, and candles, that she failed to notify the BWC or her treating physician of these activities. The DHO based the determination on the sign in relator's front yard, the surveillance video tape made by the BWC agents, the business cards advertising relator's business, the soap making classes, the spread sheets from the E-Bay account, and the various undercover interviews conducted with relator. The DHO also determined that the BWC had sustained the burden of proving all of the elements of fraud. (The commission's order can be found at pages 146 through 151 of the record for the court's review.) The DHO also addressed relator's argument that her statements made to the BWC's agents should be excluded on the grounds that relator was not advised of her right to counsel as follows:
At the outset of hearing, the injured worker's counsel requested that the injured worker's statement and interview with the Bureau of Workers' Compensation investigators dated 04/16/2003, be excluded on the grounds that she was not advised of her right to counsel. The argument rests, in part, on theMiranda case. This argument is rejected for the simple reason that the interview and the statement was not within the context of a custodial interrogation as was the case in Miranda. UnlikeMiranda the injured worker was free to leave or terminate the interview at any time she desired. It should be noted that the interview took place at the injured worker's residence.
 {¶ 14} 8. Relator appealed and the matter was heard before a Staff Hearing Officer ("SHO") on May 4, 2004. The SHO affirmed the prior DHO order in all respects. At the hearing before the SHO, relator had argued that her statements given to the BWC agents should be excluded pursuant to R.C. 9.84. The SHO denied her request and addressed that issue as follows:
At hearing, the claimant contended that her statement given to Bureau investigators on 04/16/2003 and included in its Investigation Report should be excluded from consideration for the reason that the Bureau's investigators interviewed the claimant about her alleged work activities at that time without informing her of her right to have legal counsel present.
In this regard, the claimant cites O.R.C. 9.84, which indicates that a person appearing as a witness before any public agency or representative thereof at an administrative proceeding or investigation shall be advised of his right to counsel "before he is interrogated." The Staff hearing Officer finds that the interview with the claimant that the Bureau investigators conducted on 04/16/2003 did not rise to level of the type of custodial interrogation contemplated in O.R.C. 9.84. The interview was conducted at the claimant's residence, and Mr. Cave, one of the investigators conducting the interview, persuasively testified that the claimant was free to terminate the interview at any time and that had the claimant told the investigators to leave her residence, they would have done so. Therefore, the Staff Hearing Officer finds that the cited statutory section is not applicable to a non-custodial interview of the nature involved in this case.
The claimant also contended that Bureau of Workers' Compensation attorneys who supervise the agency's investigation units violated disciplinary rules governing the conduct of attorneys by having the non-attorney investigators contact the claimant, whom they knew was represented by counsel, without the prior consent of her counsel. The claimant further contends that as a result of such violation, her statement given to the Bureau investigators should be stricken from the record. The Staff Hearing Officer makes no finding as to whether there has been any violation of disciplinary rules; however, the Staff Hearing Officer finds that the claimant has not cited any specific authority that would mandate the exclusion of the claimant's interview statement from consideration by an administrative agency, assuming such a violation did occur.
(The commission's order can be found at pages 153-155 of the record for the court's review.)
 {¶ 15} 9. Relator's further appeal was refused by order of the commission mailed June 11, 2004.
 {¶ 16} 10. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 17} For the reasons that follow, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion and relator is not entitled to a writ of mandamus.
 {¶ 18} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 19} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached MMI. See R.C. 4123.56(A); State exrel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630.
 {¶ 20} TTD compensation is intended to compensate a claimant for the loss of earnings while the injury heals. State ex rel.Ashcraft v. Indus. Comm. (1987), 34 Ohio St.3d 42. For this reason, TTD compensation ceases when a claimant has returned to work. Ramirez.
 {¶ 21} In Ramirez, the court did not define "work." However, later cases suggest that remuneration is one key element. See, for example, State ex rel. Nye v. Indus. Comm.
(1986), 22 Ohio St.3d 75 and State ex rel. Johnson v. RawacPlating Co. (1991), 61 Ohio St.3d 599. Further, in State exrel. Blabac v. Indus. Comm. (1999), 87 Ohio St.3d 113 the court determined that the receipt of wages does not need to be for full-time worked in order for TTD compensation to be barred. The court reiterated that Ramirez provides that a return to work bars the payment of TTD compensation.
 {¶ 22} Thereafter, the court considered several cases wherein an injured worker was also self-employed. In State ex rel. FordMotor Co. v. Indus. Comm., 98 Ohio St.3d 20, 2002-Ohio-7038, the court determined that the claimant's activities did not, in and of themselves, generate any income; instead, the claimant's activities produced money only secondarily. In that case, the claimant had owned a lawn care business. As a result of his work-injury with his employer, claimant was not able to continue physically handling his lawn care business and hired three additional employees. The court focused on the following relevant factors: the claimant had removed himself from the physical labor of his business and hired other people to perform that labor; the claimant was not actively engaged in the business; and the claimant's activities in and of themselves did not generate income.
 {¶ 23} In State ex rel. Am. Std., Inc. v. Boehler,99 Ohio St.3d 39, 2003-Ohio-2457, the claimant maintained his own rental property business separate from his work with his employer, American Standard. Following his industrial injury, the claimant was seen at his properties engaging in the following activities: directing workers, picking up tools and carrying them, passing tools, measuring, pouring paint into a paint spreader, helping to clean up after painting, helping cut boards and put paneling in place, delivering materials to the work site in a truck, and assisting workers to unload equipment. The commission determined that the claimant's activities were reasonable actions of a person who has a substantial capital investment in the form of a passive investment in rental properties, and that such activity did not rise to a level of self-employment as alleged. The Supreme Court of Ohio agreed. The court reiterated that TTD compensation is precluded when the claimant begins to earn again; i.e., when he or she is paid money in direct exchange for labor. The court focused on the following relevant factors: the rental money would have been received by the claimant regardless of whether the claimant was present at the sites or not; the claimant had to hire contractors to perform the physical labor he formerly performed; the claimant's actions were not physically inconsistent with his medical restrictions; and the rental income was a passive investment.
 {¶ 24} Recently, in State ex rel. Meade v. Ind. Comm.
(2005), Franklin App. No. 04AP-1184, 2005-Ohio-6206, this court found that the claimant in that case had engaged in activities which constituted work and precluded his receipt of TTD compensation. In Meade, the claimant sustained a work-related injury while employed by Allied Systems, Inc. ("Allied Systems") and was paid TTD compensation from February 3, 2003 through February 3, 2004. Allied Systems filed a motion requesting that all the TTD compensation paid to the claimant be recouped based on evidence submitted that claimant was working in a self-employed capacity at a pizza shop called Ron's Pizza Enterprises, Inc. ("Ron's Pizza").
 {¶ 25} The record showed that Ron's Pizza had been run by claimant's wife since November 17, 2000. During the time he was paid TTD compensation, claimant was observed at Ron's Pizza taking orders, preparing food, serving customers, working the cash register, and delivering pizzas.
 {¶ 26} This court found that the claimant was indeed engaged in work activity and that, even though the claimant was not being compensated in the form of wages, the activities which the claimant undertook were income generating activities which precluded the payment of TTD compensation. Although claimant argued that the pizza shop business would have been maintained whether he had been physically present at the shop or not, and that he did not replace any employees of the pizza shop, this court found that the claimant's activities of preparing food, serving customers, working the cash register, and delivering pizzas are the very activities which generate income for the pizza shop. Unlike the situations presented in Ford andAmerican Standard, this court found that the claimant's hands-on engagement in the activities that produce income for the pizza business are distinguishable from the more passive, supervisory activities at issue in Boehler and Ford MotorCo., activities that produced income only secondarily.
 {¶ 27} In the present case, the record shows that relator maintained a business selling homemade soaps, lotions, bath salts, and the like. Relator produced those products herself, in her home, and, with the help of her daughter, sold them at the Caeser's Creek Flea Market and over the internet. Clearly, relator's activities constitute work, and, although claimant maintained that she did not receive much profit from her endeavors, the spread sheets from E-Bay do indicate that she is paid for her products. Further, although relator's work activities are not necessarily inconsistent with her restrictions, clearly it is relator's activities which generate the income for her home business. Relator also argues that, at most, she only works two days per month at the flea market. However, this argument ignores the evidence concerning relator's activities producing the products which she is selling. As such, this magistrate finds that the commission did not abuse its discretion in finding that the BWC had met its burden of proving that relator was engaged in work activity while receiving TTD compensation. Although relator also argues that any overpayment should begin in November 2003 when she procured a permanent booth at the flea market, the records show that she was producing products and selling them over the internet in December 2001. Of course, relator may be entitled to an award of wage loss compensation.
 {¶ 28} Relator also contends that the commission abused its discretion by finding that claimant had committed fraud. The prima facie elements of fraud which must be established are: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance.
 {¶ 29} In the present case, the commission found that relator had a duty to disclose to the BWC the fact that she was self-employed and that she failed to do so. The commission found that relator concealed her employment from the BWC, her doctors, and the commission. Second, the commission found that her concealment was material to her receipt of payments of TTD compensation. If relator would have notified the BWC that she was working, she would have jeopardized her receipt of TTD compensation. Third, the commission noted that the warrants issued to relator indicated that, by endorsing them, relator was attesting to the fact that she was not working. Further, the C-84's signed by relator also indicated that TTD compensation was not payable if she was working. Further, the magistrate notes that, when questioned by the agents before she knew their status, relator spoke openly about her business, the amount of work she did and her customers. However, once she discovered the agent's true identity, relator tried to maintain that her involvement was nothing more than a hobby. Furthermore, relator continues to contend that she makes little or no profit; however, the commission submitted evidence of her receipts. While it does not appear that relator has been making a great deal of money, she did not present any evidence of the costs associated with her business. As such, the magistrate finds that there is evidence that she knowingly made false statements. Fourth, the commission concluded that relator demonstrated an intent to defraud when she initially denied selling any products over the internet or at a flea market. The BWC had evidence to the contrary which they presented to relator after she denied those facts. Fifth, the commission concluded that the BWC was justified in relying on relator's representations or concealment, and lastly, that the BWC was injured as a proximate result of that reliance.
 {¶ 30} As stated previously, relator may be entitled to wage loss compensation; however, her work activity preclude her from qualifying for TTD compensation. The commission had evidence that it takes relator approximately two hours to make a batch of soap and that, on one evening, she made three batches. Further, the BWC obtained evidence that relator was glad to have procured a permanent booth at the Caeser's Creek Flea Market because she would have a place to sell her inventory. The magistrate finds that the commission had some evidence before it from which to conclude that this was an ongoing business and that it was more than just a hobby. As such, the magistrate finds that the commission did not abuse its discretion in finding fraud.
 {¶ 31} Relator contends that the BWC should not have been allowed to introduce as evidence the statements that she made to the agents when they interviewed her without informing her that she had a right to counsel. This magistrate disagrees.
 {¶ 32} R.C. 9.84 provides, in relevant part, as follows:
Any person appearing as a witness before any * * * bureau, commission, * * * or representative thereof, in any admini-strative or executive proceeding or investigation, public or private, if he so requests, shall be permitted to be accompanied, represented, and advised by an attorney, whose participation in the hearing shall be limited to the protection of the rights of the witness, * * * and the witness shall be advised of his right to counsel before he is interrogated. * * *
 {¶ 33} The commission concedes that the special investigative unit agents and fraud analysts are representatives of a public bureau as contemplated by the statute. Further, the commission acknowledges that the term "witness" as used is R.C. 9.84 is to be construed in its broadest sense and does not distinguish between the subject of an investigation and other witnesses. Inre Civ. Serv. Charges Specs. Against Piper (2000),88 Ohio St.3d 308. The crucial issue in this particular case is whether R.C. 9.84 applies to administrative investigations and the investigative interview in question here.
 {¶ 34} It is undisputed that, in order for a statutory right to counsel provided in R.C. 9.84 to attach, a certain level of formality must exist. This court stated as follows in Kirch v.Ohio Bur. of Workers' Comp., 154 Ohio App.3d 651,2003-Ohio-5211:
The majority in Piper, which was decided on April 5, 2000, did not address the meaning of other words or phrases in R.C.9.84, but in a concurring opinion three justices joined to clarify the meaning of the term "administrative or executive proceeding or investigation." The concurring opinion made explicit what the majority opinion suggested: that appearing as a "witness" is not sufficient by itself to trigger the right to counsel under R.C. 9.84, because one must also be appearing in an administrative or executive proceeding or investigation for the statute to apply. Piper, 88 Ohio St.,3d at 312, 725 N.E.2d 659. In the concurring opinion, the justices concluded that an informal interview does not trigger a right to counsel under R.C.9.84 and that the benefits of the statute are triggered only where the circumstances demonstrate "the requisite formality" that distinguishes an administrative or executive proceeding or investigation from an informal interview.
 {¶ 35} In the present case, this magistrate concludes that R.C. 9.84 does not apply to the within circumstances. As this court noted, appearing as a "witness" is not sufficient by itself to trigger the right to counsel under R.C. 9.84. This was an informal interview which does not trigger the right to counsel under R.C. 9.84. (See, also, State ex rel Bays v. Ind. Comm.,
Franklin App. 03AP-424, 204-Ohio-2944. Although this court found that Bays had waived his R.C. 9.84 argument for purposes of his mandamus action, this court noted, nevertheless, that the circumstances surrounding interviews by the BWC's special investigation unit agents, when considered under Kirch, were insufficient to establish the level of formality for R.C. 9.84 to apply.)
 {¶ 36} Further, relator's arguments that her due process protections were denied her is rejected. In Bays, this court went on to address the constitutional argument and stated as follows:
We also see no constitutional violation, in and of itself, in having the investigators write a statement and then having relator sign it, particularly given the finding by the commission that relator can read and has never alleged that he signed the statement under any duress or misapprehension. Statements prepared by police and signed by criminal defendants may even be admissible in criminal hearings, so far as there are no indicia of constitutional infirmity. There must be a determination in each case of the reliability of such a confession and how much weight it should be given Therefore this argument is without merit.
(Bays, at ¶ 6.)
 {¶ 37} Relator does not contend that her due process rights were violated at the hearing. Relator was not deprived of her right to counsel at the hearing. Furthermore, relator was not required to answer the agent's questions when they came to her home. Relator was not in custody at the time. Relator appears to argue, in her brief, that the BWC knows whether or not a particular claimant is represented by counsel at the time the agents interview a claimant relative to a fraud investigation. In those situations, relator contends the agents should not question the claimants at all; instead, the agents should discuss matters with the claimant's attorney. Further, relator appears to argue that because the agents are putting together a report and because the investigation could lead to criminal charges, additional safeguards must apply. However, as this court noted in Bays,
that many aspects of a police investigation proceed with the questioning of witnesses by the police without those witnesses initially being informed of their right to counsel. Relator simply has not established that her due protections were violated by the agents during the course of this investigation.
 {¶ 38} Based upon the foregoing, it is this magistrate's conclusion that relator has not demonstrated the commission abused its discretion in finding that she was overpaid TTD compensation and in finding fraud, and relator's request for writ of mandamus should be denied.
[1] The record discloses that relator owned and operated her own business of making and selling homemade soaps, lotions, and candles, while receiving TTD compensation. At no time did relator notify the BWC or her treating physician of these activities.