[Cite as *Schmidt v. Newtown*, 2012-Ohio-890.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| MICHAEL C. SCHMIDT, | : | APPEAL NO. C-110470 |
| Plaintiff-Appellant, | : | TRIAL NO. A-0907388 |
| vs. | : | |
| THE VILLAGE OF NEWTOWN, | : | *O P I N I O N.* |
| and | : | |
| VILLAGE COUNCIL FOR THE VILLAGE OF NEWTOWN, | : | |
| | : | |
| Defendants-Appellees. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed.

Date of Judgment Entry on Appeal:  March 7, 2012

*John C. Korfhagen*, for Plaintiff-Appellant,

*Schroeder, Maundrell, Barbiere & Powers, Lawrence E. Barbiere* and *Scott A. Sollmann*, for Defendants-Appellees.

Please note:  This case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1}   Plaintiff-appellant Michael C. Schmidt appeals from the trial court's entries granting summary judgment to defendants-appellees The Village of Newtown and Village Council for the Village of Newtown (collectively the "Village") on all of Schmidt's claims and denying Schmidt's motion for partial summary judgment. Because we determine that the trial court properly granted summary judgment to the Village and denied Schmidt's motion, we affirm the trial court's judgment.

## Background

{¶2}   The Village had hired Schmidt on January 8, 2008, to serve as the Village's street commissioner and cemetery sexton. At some point after he had been hired, Schmidt had also been made the maintenance supervisor. The street commissioner/cemetery-sexton position had been a one-year appointment in accordance with R.C. 735.31. The Village's Personnel Policy Manual (the "Manual"), which Schmidt acknowledged he had received, had provided that all Village employees were "at will" and that they could be terminated with or without cause. The Manual also had contained a discipline policy, which had included a progressive disciplinary process. The Manual had stated, however, that the disciplinary process was a guideline and that termination could be the first step in the process.

{¶3}   On January 23, 2009, Schmidt had received a letter from the mayor stating that the mayor would be recommending Schmidt's termination at a Village council meeting in four days. The letter informed Schmidt that he would be given the opportunity at the meeting to present evidence and be represented by counsel. At the meeting, the council members had voted unanimously to terminate Schmidt's employment.

2

{¶4} Schmidt had filed an appeal of the council members' termination decision pursuant to R.C. Chapters 2505 and 2506 in the Hamilton County Court of Common Pleas, in the case numbered A-0901655. The Village had made a motion to dismiss that action, which the trial court had granted. The court had determined that Schmidt was not entitled to an appeal because the council members' decision had not been the result of a quasi-judicial proceeding. The court had also determined that allowing an appeal in this instance would be inconsistent with the at-will nature of unclassified, civil-service employment.

{¶5} Schmidt then filed the instant action, asserting eleven claims for relief, including claims for deprivation of procedural due process; claims under 42 U.S.C. 1982 and 1983; declaratory judgment as to Schmidt's employment status under R.C. 735.31; notice of right to an attorney under R.C. 9.84; unused vacation time and compensatory time under the Fair Labor Standards Act, 29 U.S.C. 201; failure to continue health insurance; and claims under the Open Meetings Act and Public Records Act. The trial court granted the Village's motion for summary judgment as to all claims and denied Schmidt's motion for partial summary judgment. Schmidt appeals.

### *Summary-Judgment Standard*

{¶6} When reviewing a summary-judgment ruling, we apply a de novo standard of review. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390, 738 N.E.2d 1243 (2000). Under Civ.R. 56(C), summary judgment is appropriate when no genuine issues of material fact remain, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and with the evidence construed most strongly in favor of the nonmoving

3

party, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

{¶7}   In Schmidt's first assignment of error, he contends that the trial court erred in granting the Village's motion for summary judgment on all claims.   We address each of Schmidt's claims in turn.

### *"At-Will" Employment Status*

{¶8}   In counts one and two of Schmidt's complaint, he requests relief for deprivation of procedural due process under the Fourteenth Amendment to the U.S. Constitution and property rights under 42 U.S.C. 1982 and 1983, stemming from his termination.   In order to succeed on a claim for procedural due process under the Fourteenth Amendment, and its state-law counterpart, Schmidt must establish the existence of a liberty or property interest. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).   Similarly, 42 U.S.C. 1982 and 1983 require the existence of a property right, or the existence of some other right, privilege, or immunity.   At-will employees, however, do not have a property interest in continued employment. *Hemphill v. City of Dayton*, 2nd Dist. No. 23782, 2011-Ohio-1613, ¶ 100.

{¶9}   In Schmidt's previously-filed action, case numbered A-0901655, the trial court determined that Schmidt was an unclassified, at-will employee, and therefore he was not entitled to an appeal under R.C. Chapters 2505 and 2506. Collateral estoppel, or issue preclusion, "precludes the relitigation, in a second action, of an issue that had been actually and necessarily litigated and determined in a prior action that was based on a different cause of action." *State ex rel. Nickoli v. Erie Metroparks*, 124 Ohio St.3d 449, 2010-Ohio-606, 923 N.E.2d 588, ¶ 21.

4

Because Schmidt's at-will employment status was necessarily litigated and determined in the first action, and Schmidt never appealed the trial court's determination in the first action, Schmidt is collaterally estopped from relitigating the issue in this action.

{¶10} Moreover, the evidence in the record demonstrates that Schmidt was an at-will employee. Under Ohio law, employment is presumed to be terminable at will by either party, so long as the reason for the termination is not contrary to law. *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 103, 483 N.E.2d 150 (1985). The employer's and employee's conduct may evidence a reasonable expectation of continued employment. *See Holthaus v. Cincinnati Bd. of Educ.*, 76 Ohio App.3d 443, 447, 602 N.E.2d 360 (1st Dist.1991).

{¶11} Even though employment is presumed to be at will, and the Village's Manual provides that all employees are at will, Schmidt argues that the disciplinary process in the Manual, which provides for varying degrees of discipline, creates a protectable interest in continued employment. The disciplinary process in the Manual establishes progressive steps of discipline, but the Manual also states that the process is a guideline and that discipline can begin at any step, including termination. Therefore, the Manual does not create an implied contract term that alters Schmidt's at-will status. *See Fennessey v. Mount Carmel Health Sys., Inc.*, 10th Dist. No. 08AP-983, 2009-Ohio-3750, ¶ 22 (the mere existence of a disciplinary procedure in an employment manual does not change the at-will nature of employment).

{¶12} In count three of Schmidt's complaint, he requests a declaratory judgment as to his employment status under R.C. 735.31. First, collateral estoppel

also precludes Schmidt from arguing that R.C. 735.31 alters his status as an at-will employee. Second, R.C. 735.31 does not create an interest in continued employment in this case. R.C. 735.31 by its plain language establishes a one-year appointment term for a street-commissioner position of a municipal corporation, which includes a six-month probationary period. According to R.C. 735.31, an appointment is not final until the end of the probationary period. Nothing in the statute creates an expectation of continued employment, especially where, as here, the one-year appointment time had run prior to termination.

{¶13} Therefore, because no genuine issues of material fact remain on counts one through three of Schmidt's complaint, the trial court did not err in granting summary judgment to the Village on those counts.

### R.C. 9.84

{¶14} In count four of Schmidt's complaint, he asserts that he suffered damages as the result of the Village's failure to comply with R.C. 9.84. R.C. 9.84, in short, provides that witnesses appearing in an administrative or executive proceeding before a public official or body must be notified of their right to have an attorney present at the proceeding. Schmidt contends that two meetings had occurred among Schmidt, the Village's mayor, and a council member, one on January 23 or 24, 2009, and one in December 2008. Schmidt alleges that the Village had failed to inform him of his right to counsel at these meetings in violation of R.C. 9.84.

{¶15} Schmidt's claim under R.C. 9.84 fails. R.C. 9.84, by its express terms, does not apply to "an employee of an appointing authority * * * who appears only as a witness in an employment interview, investigation, or proceeding conducted by or

6

for the appointing authority." An "appointing authority" is the officer or body with the power of appointment or removal. R.C. 124.01(D). The only evidence in the record shows that these meetings were informal, investigatory meetings conducted by, or for, officials with removal power over Schmidt's position. Thus, 9.84 does not apply. *See also Kirch v. Ohio Bur. of Workers' Comp.*, 154 Ohio App.3d 651, 2003-Ohio-5211, 798 N.E.2d 661 (10th Dist.) (determining that an investigatory interview, which was not under oath or recorded, lacked the requisite level of formality to trigger R.C. 9.84). The trial court did not err in granting summary judgment to the Village on count four of Schmidt's complaint.

### Unused Vacation/Compensatory Time and Failure to Continue Health Insurance

{¶16} In counts five and six of Schmidt's complaint, he alleges that the Village had failed to pay him unused vacation and compensatory time. With regard to unused vacation time, Schmidt argues that he is entitled to vacation pay as provided in the Village's Manual. The Manual provides for payment of unused vacation time upon an employee's termination, provided that two weeks' notice has been given, and that "the termination is not the result of a disciplinary measure." The undisputed evidence shows that Schmidt's termination had been the result of a disciplinary measure. Therefore, no genuine issues of material fact exist as to the issue of unused vacation time.

{¶17} With regard to compensatory time, Schmidt argues that he is entitled to payment for accumulated compensatory time, in accordance with the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201. Pursuant to the FLSA, employers must generally pay overtime compensation for work performed in excess of 40 hours per week. 29 U.S.C. 207(a)(1). Overtime need not be paid to an exempt employee

7

"employed in a bona fide executive, administrative, or professional capacity * * *." 29 U.S.C. 213(a)(1). The determination of whether an employee's duties fall within an executive, administrative, or professional exemption is a question of law. *White v. Murtis M. Taylor Multi-Service Ctr.*, 188 Ohio App.3d 409, 414, 2010-Ohio-2602, 935 N.E.2d 873 (8th Dist.).

{¶18} In determining whether an employee is exempt, courts must analyze the Secretary of Labor regulations. *See* 29 C.F.R. 541.0 et seq. According to these regulations, an employee serving in a bona-fide executive capacity means any employee:

> (1) Compensated on a salary basis at a rate of not less than $455 per week * * * exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. 541.100(a).

{¶19} As to the first and third prongs, Schmidt had been paid on a salary basis of at least $455 per week, and Schmidt had supervised at least two employees. As to the fourth prong, the evidence offered by the Village shows that Schmidt had disciplined a subordinate employee on at least one occasion, and Schmidt had recommended hiring an additional employee to his department, and that recommendation had been approved. Schmidt made a conclusory averment that he had not had the authority to hire or fire other employees and that his suggestions and recommendations as to the discipline or status of other employees had not been given any weight. But Schmidt's conclusory averment does not create an issue of material fact. *See James Yeager Homebuilders, Inc. v. Foss*, 9th Dist. No. 23888, 2008-Ohio-548, ¶ 8 ("[A] nonmoving party cannot create a material dispute of fact simply by producing an affidavit [that] contains conclusory allegations and fails to set forth any facts that contradict the moving party's factual assertions.").

{¶20} The main dispute between the parties concerns the third prong, as to whether Schmidt's primary duty was management. "Management" includes

> activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining

9

the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. 541.102.

{¶21} Factors a court should consider when determining whether management duties are "primary" are

the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. 541.700.

{¶22} Schmidt asserts that he had spent most of his time performing "blue collar" maintenance work, so that management was not his primary duty. The time spent performing exempt work, however, is just one factor in determining an employee's primary duty under 29 C.F.R. 541.700. The evidence shows that

Schmidt's managerial duties had been more important to the operation of the Village than his physical labor. Schmidt had worked with little direct supervision, and he had exercised independent judgment in management of the department. Furthermore, the evidence shows that Schmidt had earned roughly 25 percent more than one of his subordinate employees. Thus, Schmidt qualifies as an exempt executive employee under the FLSA. Schmidt has not presented any evidence that he had been promised payment for compensatory time from the Village. Therefore, no genuine issues of material fact exist as to Schmidt's claim for unpaid compensatory time.

{¶23} In count seven of Schmidt's complaint, he claims that he is entitled to compensation for the Village's failure to continue his health insurance. Schmidt conceded in his opposition to the Village's motion for summary judgment that the survival of this claim depends upon the determination that the Village wrongfully terminated him. Because we have not determined that Schmidt had been wrongfully terminated, this claim fails.

{¶24} The trial court did not err in granting summary judgment to the Village on counts five, six, and seven of Schmidt's complaint.

### Open Meetings Act

{¶25} Counts eight and nine of Schmidt's complaint request relief under the Open Meetings Act ("Act"). Schmidt argues in count eight of his complaint that the Village had violated the Act when the Village had held executive sessions in November 2008 and January 2009 for "personnel discipline." Schmidt argues that, under R.C. 121.22(G), he had been entitled to notice of the meetings, as he had likely been the subject of the potential discipline discussed during the executive sessions.

{¶26} R.C. 121.22(G)(1) provides that an executive session may be held "[t]o consider the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee * * *, or the investigation of charges or complaints against a public employee * * *, unless the public employee * * * requests a public hearing." R.C. 121.22(G)(1) does not create a right to a public hearing where one did not previously exist. *Matheny v. Frontier Local Bd. of Edn.*, 62 Ohio St.2d 362, 367, 405 N.E.2d 1041, 1045 (1980). Only when a hearing is statutorily authorized, and a public hearing is requested, does R.C. 121.22(G) operate as a bar to holding an executive session to consider the dismissal of a public employee. *Conner v. Lakemore*, 48 Ohio App.3d 52, 54, 547 N.E.2d 1230 (9th Dist.1988).

{¶27} Schmidt has not pointed to any authority establishing the right to a public hearing in this case. Therefore, no genuine issue of material fact remains on this issue.

{¶28} In count nine, Schmidt contends that the Village had held several executive sessions without asserting a proper basis for the adjournment in violation of the Act. As this court recently determined, an executive session is not a "meeting" as defined by the Act, and therefore not required to be held in public, where no deliberations take place and no decisions are reached. *The Cincinnati Enquirer v. Cincinnati Bd. of Edn.*, 192 Ohio App.3d 566, 2011-Ohio-703, 949 N.E.2d 1032 (1st Dist.). No evidence exists that would suggest that any deliberations had been made or decisions had been reached at these executive sessions. Schmidt's claim cannot survive summary judgment. Therefore, the trial court did not err in granting summary judgment to the Village on Schmidt's claims under the Open Meetings Act.

*Public Records Act*

{¶29}   Finally, counts ten and eleven of Schmidt's complaint allege causes of action under the Ohio Public Records Act, R.C. 149.43.  Schmidt contends in count ten that the Village had violated R.C. 149.43 by failing to produce, in response to Schmidt's public-records request, a job description for the maintenance-supervisor position.  Schmidt argues that an issue of fact exists with regard to this issue because Village council member Ken Pulskamp testified in his deposition that he had seen a written job description.  In response to Schmidt's requests for admission, the Village stated that it was not aware of any written description.

{¶30}   A public-records action must be brought as a mandamus action.  *State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420, 427, 639 N.E.2d 83 (1994).  In turn, a mandamus action must be brought in the name of the state.   R.C. 2731.04. Schmidt neither brought this action as a mandamus action, nor did he bring the action on behalf of the state—even after the Village noted Schmidt's procedural defects.  Therefore, the Village was entitled to summary judgment on count ten of the complaint.  *See Litigaide, Inc. v. Custodian of Records for Lakewood Police Dept.*, 75 Ohio St.3d 508, 664 N.E.2d 521 (1996); *Blankenship v. Blackwell*, 103 Ohio St.3d 567, 574, 2004-Ohio-5596, 817 N.E.2d 382.

{¶31}   In count eleven of the complaint, Schmidt alleges that destruction of a public record subjected the Village to liability under R.C. 149.351.  Schmidt states in his appellate brief that he is not appealing the dismissal of count eleven; therefore, we will not address whether summary judgment was proper on this claim.

{¶32}  In conclusion, because we determine, after a de novo review, that the trial court properly granted summary judgment to the Village on Schmidt's claims, we overrule Schmidt's first assignment of error.

### Second Assignment of Error

{¶33}  Schmidt contends in his second assignment of error that the trial court erred in denying his motion for partial summary judgment.  Because we have determined that the trial court properly granted summary judgment in favor of the Village on Schmidt's claims, we also determine that the trial court properly denied Schmidt's motion for partial summary judgment.  The second assignment of error is overruled.

### Conclusion

{¶34}  No genuine issues of material fact exist with respect to Schmidt's claims, and the Village is entitled to judgment as a matter of law.  The trial court properly granted the Village's motion for summary judgment and denied Schmidt's motion for partial summary judgment.  The judgment of the trial court is affirmed.

Judgment affirmed.

CUNNINGHAM, P.J., and DINKELACKER, J., concur.

Please note:
    The court has recorded its own entry on the date of the release of this opinion.