[This decision has been published in *Ohio Official Reports* at 96 Ohio St.3d 161.]

JOHNSON, APPELLEE, *v.* OHIO DEPARTMENT OF YOUTH SERVICES, APPELLANT.

[Cite as *Johnson v. Ohio Dept. of Youth Serv.*, 2002-Ohio-4010.]

*Employer and employee—Public employment—System of awarding compensatory time for extra hours worked and deducting compensatory time for hours absent does not destroy an employee's salaried exempt status, when.*

(No. 2001-0339—Submitted March 26, 2002—Decided August 21, 2002.)

Appeal from the Court of Appeals for Franklin County, No. 00AP-677.

_____

SYLLABUS OF THE COURT

A system of awarding compensatory time for extra hours worked and deducting compensatory time for hours absent does not destroy an employee's salaried, exempt status when the employee's salary is not reduced because of variations in the quality or quantity of the work performed.

_____

PFEIFER, J.

{¶1} Erma Johnson filed suit in the Court of Claims of Ohio on September 14, 1998, claiming that DYS's system of compensatory ("comp") time rendered her a nonsalaried, nonexempt employee. For the reasons that follow, we conclude that the comp-time system did not affect her salaried status. Accordingly, we reverse the judgment of the court of appeals.

{¶2} Erma Johnson worked for the Ohio Department of Youth Services ("DYS") as a regional administrator and managing officer. DYS requires regional administrators such as Johnson to work 40 hours per week. Johnson's work week was composed of five nine-hour days, each of which included a one-hour lunch

break. DYS required Johnson to be at work during the department's core hours of 8:30 a.m. to 4:30 p.m.

{¶3} DYS's comp-time system allows salaried, exempt employees to accrue hour-for-hour comp time for hours worked in excess of 40 per week, with a supervisor's approval. Supervisors typically approve comp time when the additional hours worked are "necessary for operation of the division or work unit." When a salaried exempt employee is tardy or absent during core hours, DYS requires the employee to account for the hours missed by using accrued leave time such as vacation time, sick leave, or comp time. The employee is allowed to choose which type of leave to use, subject to a supervisor's approval. At times, when Johnson did not indicate a choice, a supervisor accounted for the missed time from the comp-time balance.

{¶4} Johnson normally started work at 8:30 a.m. and occasionally worked as late as 9:00 or 10:00 p.m. Her supervisor frequently approved accrual of comp time for her extra hours. On a number of occasions in 1997 and 1998, Johnson arrived after core hours had started or left before they had ended. To account for some of these absences, Johnson used sick leave and vacation time. For others, she indicated that the absent hours were "flex time." In those instances, Johnson's supervisor accounted for the absent hours by deducting from her comp time, which always had a positive balance. Johnson's cash salary was never reduced because she always had sufficient vacation time, sick leave, or comp time available to compensate for work hours missed.

{¶5} Johnson filed suit, claiming that DYS's comp-time system rendered her a nonsalaried, nonexempt employee. She alleged that she should be paid overtime for the hours in excess of 40 per week that she had worked. The Court of Claims held that Johnson had been a salaried, overtime-exempt employee and therefore was not entitled to overtime pay.

2

**{¶6}** Johnson appealed. The court of appeals reversed, determining that an employer may account for missed time by deducting from an employee's personal or sick leave, but not from an employee's comp time. The court held that deduction of comp time violates the salary test of the Fair Labor Standards Act ("FLSA"), which prohibits the reduction of an overtime-exempt employee's salary according to hours worked. The cause is now before this court pursuant to the allowance of a discretionary appeal.

**{¶7}** Pursuant to FLSA, employers must generally pay overtime compensation for work performed in excess of 40 hours per week. Section 207(a)(1), Title 29, U.S.Code. However, any salaried "employee employed in a bona fide executive, administrative, or professional capacity" is exempt from that requirement. Section 213(a)(1), Title 29, U.S.Code. It is undisputed that Johnson's duties at DYS qualify her for exempt status under either the executive or administrative criteria.

**{¶8}** At issue is whether Johnson was a salaried employee. Section 541.1(f), Title 29, C.F.R. Pursuant to the salary test, an employee is paid "on a salary basis" if "he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." Section 541.118(a), Title 29, C.F.R. "[A]dditional compensation besides the salary is not inconsistent with the salary basis of payment." Section 541.118(b), Title 29, C.F.R.

**{¶9}** It is not disputed that in every biweekly pay period during Johnson's employment with DYS, she received her full salary without reduction because of "the quality or quantity of the work performed." Accordingly, we conclude that Johnson was paid a salary.

**{¶10}** The next question is whether DYS's comp-time system destroyed Johnson's salary status. The test is whether the accrual or deduction of comp time

subjected her salary "to reduction because of variations in the quality or quantity of the work performed." Section 541.118(a), Title 29, C.F.R. We conclude that the accrual of comp time did not destroy Johnson's salary status.

{¶11} "Additional compensation" will destroy an employee's salaried, exempt status only where it divides the actual salary into multiple "parts for the purpose of circumventing the requirement of payment 'on a salary basis.' " Section 541.118(b), Title 29, C.F.R. DYS's system for accruing comp time was not intended to, and does not, circumvent the salary test; rather it was intended to ensure that an exempt employee's salary remained constant. Although the comp-time system did not result in additional compensation for Johnson, it served to compensate her, when her actual time worked was less than the required amount for any particular period. Accordingly, it could be viewed as additional compensation. Recognizing that comp time is the equivalent of compensation does not also mean that it is salary. We conclude that comp time accrued pursuant to DYS's comp-time system is nonsalary compensation. See *Kuchinskas v. Broward Cty.* (S.D.Fla.1993), 840 F.Supp. 1548, 1555 ("compensatory time may be part of an employee's compensation package, [but] it does not constitute salary"). Therefore, any reduction in Johnson's comp time for hours absent from work during core hours will not destroy her salaried status because her salary was not reduced. Section 541.118(a), Title 29, C.F.R. See *Internatl. Assn. of Fire Fighters, Alexandria Local 2141 v. Alexandria* (E.D.Va.1989), 720 F.Supp. 1230, 1232 ("docking of leave or accrued compensatory time for absences of less than an entire day" does not "defeat salaried status").

{¶12} This conclusion is supported by further analysis of the salary test, which states that salary is "a predetermined amount * * * [and] is not subject to reduction because of variations in the quality or quantity of the work performed." Section 541.118(a), Title 29, C.F.R. Comp time is not "predetermined." It is granted in special circumstances to compensate employees for work beyond DYS's

expectations. Comp time is granted only when extra hours are worked and the extent of comp time cannot be determined prior to the hours for which it is accrued. It also cannot be exchanged for cash. Further, the term "amount" suggests that comp time is not salary because "amount" is generally construed to mean a "cash" amount. *Barner v. Novato* (C.A.9, 1994), 17 F.3d 1256, 1261-1262.

{¶13} We hold that a system of awarding comp time for extra hours worked and deducting comp time for hours absent does not destroy an employee's salaried, exempt status when the employee's salary is not reduced because of variations in the quality or quantity of the work performed.

{¶14} Our holding is supported by the Department of Labor's position on the salary test. Considering a proposed benefits plan that included a comp-time system substantially similar to that of DYS, the Department of Labor stated, "Where an employer has a bona fide benefits plan (e.g., vacation time, sick leave, comp time), it is permissible to substitute or reduce the accrued leave in the plan for the time an employee is absent from work even if it is less than a full day without affecting the salary basis of payment, if by substituting or reducing such leave the employee receives in payment an amount equal to his or her guaranteed salary. Payment of an amount equal to the employee's guaranteed salary must be made even if an employee has no accrued benefits in the leave plan and the account has a negative balance, where the employee's absence is for less than a full day." Department of Labor Opinion Letter 2199 (Oct. 19, 1999). Though this analysis is not controlling, it supports our conclusion that the accrual of and deduction from Johnson's comp time did not destroy her salaried status.

{¶15} Because the comp-time system does not destroy Johnson's salaried, exempt status, her claim for overtime pay was properly denied by the Court of Claims. Accordingly, we reverse the judgment of the court of appeals.

Judgment reversed.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, COOK and LUNDBERG STRATTON, JJ., concur.

_____

Wagoner & Steinberg, Ltd., C. William Bair and Thomas G. Overley, for appellee.

Betty D. Montgomery, Attorney General, Stephen P. Carney, Associate Solicitor, Richard N. Coglianese, Michael R. Gladman and Robert L. Strayer, Assistant Solicitors, Peggy W. Corn and Robert L. Griffin, Assistant Attorneys General, for appellant.

Fay D. Dupuis, City Solicitor, and Roshani D. Hardin, Assistant City Solicitor, urging reversal for amicus curiae city of Cincinnati.

Barbara E. Herring, Law Director, and James G. Burkhardt, urging reversal for amicus curiae city of Toledo.

_____