CORBIN, Appellant,

v.

KELLY PLATING CO. et al., Appellees.

[Cite as *Corbin v. Kelly Plating Co.,* 187 Ohio App.3d 129, 2010-Ohio-1760.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 93552.

Decided April 22, 2010.

Law Office of Daniel J. Nealon and Daniel J. Nealon, for appellant.

Polito, Paulozzi and Rodstrom, L.L.P., and Michael G. Polito, for appellees.

---

FRANK D. CELEBREZZE, Jr., Judge.

{¶ 1} In a case of first impression, plaintiff-appellant, Joe L. Corbin, appeals the denial of his motion for attorney fees in a Fair Labor Standards Act ("FLSA") suit brought against defendants-appellees, the Kelly Plating Company ("Kelly Plating") and its owner, James Kelly.[1] We are compelled to balance important policy considerations in reaching a decision in this matter. On the one hand, the Ohio and United States legislatures have evidenced a desire to facilitate the vindication of the rights of individuals in being paid fairly with the bestowal of an award of attorney fees to a successful employee-plaintiff. On the other, the usefulness of a system of court-annexed arbitration designed to provide a less costly and more expedient avenue for parties to resolve their disputes will operate effectively only if the arbitration panel can dispose of all claims before it. After a thorough review of the record and pertinent case law, we affirm the decision of the trial court denying appellant's motion for attorney fees.

{¶ 2} Corbin was working for Kelly Plating, at least part of the time in a supervisory capacity. When working in this capacity, he received increased pay. He sometimes worked third shift, for which he also received increased pay. In calculating overtime, Kelly Plating did not factor in these increases in pay. Because of this oversight, Corbin contacted an attorney and filed suit for breach of federal and state wage and employment law on January 15, 2008, seeking back wages, liquidated damages, and attorney fees.[2]

---

1. The caption of appellant's complaint set out Mr. Kelly's name as James Kely.

2. Corbin alleged violation of Ohio's wage and overtime law, R.C. 4111.01 et seq., and the FLSA encompassed in Section 201, Title 29, U.S.Code, et seq.

{¶ 3} Appellees filed an answer and counterclaim alleging that appellant consistently left 15 minutes early and that he owed them various fees for uniforms and union dues.

{¶ 4} On June 27, 2008, after all discovery was complete, the trial court ordered the case to proceed through court-annexed arbitration pursuant to Loc.R. 29 of the Court of Common Pleas of Cuyahoga County, General Division. The parties submitted their claims to the arbitration panel assigned to this case. This panel conducted various hearings and ultimately, on September 11, 2008, arrived at a decision in which it awarded appellant $1,600 in back wages and appellees $500 on their counterclaim, with a net award of $1,100 to appellant. The trial court entered the arbitration panel's decision 32 days later on November 13, 2008, making it final.

{¶ 5} On November 17, 2008, appellant submitted a motion to the trial court for attorney fees in the amount of $13,937.50, and the motion was denied. The trial court determined that attorney fees were not requested in the arbitration proceeding where the arbitrators had jurisdiction and authority to award such fees. The trial court concluded that the arbitration panel was in the best position to determine the reasonableness of attorney fees and that no part of appellant's claim was excepted from the arbitration process. Appellant then filed a timely notice of appeal.

## I. Assignment of Error

{¶ 6} Appellant cites one assignment of error for our review, claiming that "[t]he trial court erred when it denied Plaintiff/Appellant's Application for Attorney's Fees when the application was filed four days after judgment was entered pursuant to law."

## II. Standard of Review

{¶ 7} The parties differ as to what standard of review should apply in this case. Appellees argue that the decision of a trial court to award attorney fees is reviewed under an abuse-of-discretion standard. Appellant argues that although that may be the general rule, in this case, that analysis was never reached because the trial court ruled that as a matter of law, attorney fees were not appropriate due to procedural issues.

{¶ 8} "Because this issue requires the interpretation of statutory authority, which is a question of law, our review is de novo." *State v. Consilio,* 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, ¶ 8, citing *Brennaman v. R.M.I. Co.* (1994), 70 Ohio St.3d 460, 466, 639 N.E.2d 425 (holding that "[c]onstruction of a statute is not a question of fact but a question of law").

## III. Federal and State Law Entitlement to Attorney Fees

{¶ 9} Generally, a trial court has discretion to award attorney fees only in certain circumstances. One such instance is when attorney fees are specifically authorized by statute. The FLSA provides for liquidated damages and reasonable attorney fees to be paid by a defendant in addition to any judgment awarded to a plaintiff. Section 216(b), Title 29, U.S.Code. Similarly, R.C. 4111.10 allows for the recovery of costs and attorney fees to a prevailing employee. Under both of these statutory provisions, appellant is entitled to attorney fees as a prevailing party in the arbitral proceeding.

{¶ 10} The Sixth Circuit found that a statutory grant of attorney fees constitutes a "tool utilized by Congress to encourage the vindication of congressionally identified policies and rights, as well as to enable the plaintiff to obtain damages without expense for legal assistance." *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Assn., Local 307 v. G & M Roofing & Sheet Metal Co., Inc.* (1984), 732 F.2d 495, 503. However, this important policy goal must be analyzed in conjunction with the ability of a trial court to rely on the system of court-annexed arbitration established in Ohio.

## IV. Mandatory Arbitration

█ █ {¶ 11} In order to provide a less costly and more expedient route to resolve certain disputes, many states gave their courts the ability to enact arbitration rules that could force parties to try to resolve their disputes through mandatory, nonbinding arbitration.[3] See Edwards, Alternative Dispute Resolution: Panacea or Anathema? (1986), 99 Harv.L.Rev. 668. The Ohio Supreme Court, in its Rules of Superintendence, authorized lower courts to enact such local rules. Sup.R. 15. Loc.R. 29 is the embodiment of that provision for common pleas courts in Cuyahoga County. This rule establishes a system of arbitration where "[t]he report and award [of the arbitration panel], unless appealed, shall be final and shall have the attributes and legal effect of a verdict. If no appeal is taken within the time and in the manner specified, the Court shall enter judgment. After entry of judgment, execution process may be issued as in the case of other judgments." Id. at Part VI(B). Before the decision of the arbitration panel becomes final, "[a]ny party may appeal from the action of the Arbitration Panel to the Common Pleas Court of Cuyahoga County. * * * The filing of a single appeal shall be sufficient to require a de novo trial of the entire case on all issues and as to all parties * * *." Id. at Part VII(A)(1).

█ {¶ 12} The arbitration panel has "the general powers of a Court * * *," including the power "to decide the law and the facts of the case submitted to it."

---

3. This procedure is referred to as mandatory arbitration or court-annexed arbitration.

Id. at Part V(C)(2). Therefore, any claim submitted by the parties to the arbitration panel is within the jurisdiction of the panel to decide. See *Miller v. Gunckle*, 96 Ohio St.3d 359, 2002-Ohio-4932, 775 N.E.2d 475, ¶ 17–21.

{¶ 13} The parties in this case each agree that they submitted their entire claims to the arbitration panel. But even if they did not so stipulate, "[g]iven the silence of the record concerning bifurcation, a presumption arises that the Plaintiff implicitly submitted the issue of attorney fees to the arbitrators along with the issues of damages and liability for the other alleged violations." *Wilson v. Voss Chevrolet, Inc.*, Montgomery App. No. 18925, 2002-Ohio-3312, ¶ 17, 2002 WL 1396145, citing *Cleveland v. Assn. of Cleveland Fire Fighters, Local 93* (1984), 20 Ohio App.3d 249, 253, 20 OBR 311, 485 N.E.2d 792. There is no evidence in the record that appellant reserved the issue of attorney fees to be decided by the trial court. Therefore, the issue was properly before the arbitration panel to decide as a part of appellant's wage claim.

{¶ 14} The trial court refused to award attorney fees because the arbitrator was in the best position to determine the amount of reasonable fees in this case. The trial court also noted that appellant failed to reserve the issue from the jurisdiction of the arbitrator, meaning that the arbitration panel had the power to award such fees. This decision comports with other jurisdictions that have confronted similar issues in the arbitral context. See *Moore v. First Bank of San Luis Obispo* (2000), 22 Cal.4th 782, 94 Cal.Rptr.2d 603, 996 P.2d 706 (arbitrators' award could not be judicially corrected to award borrowers their attorney fees); *Dickens v. Lee* (1991) 230 Cal.App.3d 985, 281 Cal.Rptr. 783 ("If the purpose of judicial arbitration is to avoid traditional litigation, then that avoidance should be as complete as possible, with the arbitrator deciding *all* disputed issues including the amount of costs to be awarded, which will then be subject to judicial determination only upon a request for trial de novo"); *Turnberry Assoc. v. Serv. Station Aid, Inc.* (Fla.1995), 651 So.2d 1173 (when parties agree to submit their entire claim to arbitration, the arbitrator has authority to determine attorney fees).

{¶ 15} In *Cruz v. Northwestern Chrysler Plymouth Sales, Inc.* (1997), 179 Ill.2d 271, 227 Ill.Dec. 960, 688 N.E.2d 653, the Illinois Supreme Court faced a question similar to the issue at bar. In *Cruz*, a car buyer brought an action based in part on the Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"). The action proceeded to mandatory arbitration pursuant to Illinois court-annexed arbitration rules, which are very similar to those in Ohio. The Illinois Supreme Court held that in order to recover statutory attorney fees under the federal act, the plaintiff must present a claim for attorney fees to the arbitration panel, and it reversed the decision of the trial court awarding fees

after both parties did not appeal the decision of the arbitrator and it became final. Id. at 281, 227 Ill.Dec. 960, 688 N.E.2d 653.

{¶ 16} In reaching this determination, the *Cruz* court noted, "The determination as to whether fees should be awarded under the Consumer Fraud Act involves consideration of the time and labor required, the novelty and difficulty of the questions involved, the experience and ability of counsel, the skill necessary to perform the legal services rendered, the customary fees charged for such services, and the benefits resulting to the client. * * * Virtually all of these factors require direct knowledge of the underlying litigation and counsel's performance. * * * The circuit court will know virtually nothing about the issues in the case, how difficult it was to litigate, or how effectively counsel represented his clients. The arbitration panel, not the circuit court, is therefore the proper body to rule on statutory fee requests." Id. at 280–281, 227 Ill.Dec. 960, 688 N.E.2d 653.

{¶ 17} This logic is equally applicable in the present case. The arbitration panel that oversaw the dispute between Corbin and Kelly Plating would be in the best position to determine what constitutes a "reasonable fee" under the guidelines used in Ohio.

■ {¶ 18} The federal and state statutes authorizing the award of attorney fees in overtime-wage claims provide only for "reasonable attorney's fees." See Section 216(b), Title 29, U.S.Code; R.C. 4111.10. In Ohio, the question of what constitutes a reasonable fee is determined using the criteria set forth in the Ohio Rules of Professional Conduct. Prof.Cond.R. 1.5. This is a detailed analysis, and a determination can be made only after examining an exhaustive list of factors.[4] The nature of this calculation guides this court to the same result as that reached in *Cruz*: The arbitration panel is familiar with the time, novelty, nature, experience, and range of possible results in the cases before them. Therefore, the panel is in the best position to determine what constitutes a reasonable fee.

---

4. {¶ a}This list includes:

{¶ b}"(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

{¶ c}(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

{¶ d}(3) the fee customarily charged in the locality for similar legal services;

{¶ e}(4) the amount involved and the results obtained;

{¶ f}(5) the time limitations imposed by the client or by the circumstances;

{¶ g}(6) the nature and length of the professional relationship with the client;

{¶ h}(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

{¶ i}(8) whether the fee is fixed or contingent."

{¶ 19} Another rationale put forth by the court in *Cruz* is that "excluding fee petitions from consideration by the arbitrators would make the arbitration process pointless. The system of mandatory arbitration we have adopted will function only if defendants can rely on the arbitrator's award as fixing their maximum exposure to liability. * * * If a defendant may still face a judgment for attorney fees following an adverse arbitration award, he will have no incentive to accept the award no matter how small it might be." *Cruz,* 179 Ill.2d at 280, 227 Ill.Dec. 960, 688 N.E.2d 653. The systems of court-annexed arbitration enacted by Illinois and Ohio are very similar. No difference between the two schemes makes the point made by the Illinois Supreme Court any less applicable in Ohio. If this system is to remain a viable alternative for dispute resolution in Ohio, it must provide for a final resolution to the matters properly presented to the arbitration panel.

{¶ 20} The *Cruz* decision has been extended by at least one court of appeals in Illinois to include the rejection of an argument that is almost identical to that advanced by appellant in our case. In *MBNA Am. Bank, N.A. v. Cardoso* (1998), 302 Ill.App.3d 710, 236 Ill.Dec. 344, 707 N.E.2d 189, a credit-card issuee counter-claimed, alleging violations of section 1(b) of the Credit Card Liability Act against the issuing bank after it brought a collection action. The dispute was sent to court-annexed arbitration pursuant to the applicable Illinois local rule. The arbitration panel ruled in favor of the credit-card issuee on the card issuer's collection action and for the issuee in the amount of zero dollars on her counterclaim. The issuee then filed a motion for attorney fees after the time for challenging the award had passed.

{¶ 21} In *Cardoso,* the issuee contended that "[*Cruz* was] inapplicable * * * because her claim was for mandatory attorney fees under the [Credit Card Liability] Act, which states attorney fees are to be treated as 'costs,' and costs are excluded when determining what cases come to the arbitrators." Id. at 712, 236 Ill.Dec. 344, 707 N.E.2d 189. The court rejected this argument, finding no distinguishing difference between the procedural posture of the parties.

{¶ 22} Similar to the argument presented in *Cardoso,* appellant contends that attorney fees are not awarded as part of the judgment, but only after the judgment is entered, and that they are wholly distinct from any judgment award. However, the logic applied in *Cardoso* also applies in this case. The *Cardoso* court found no distinction between its case and *Cruz* warranting a different result. It held, "The supreme court has made it clear in *Cruz* that the issue of statutory attorney fees must be litigated within the arbitration, * * * [because] the arbitration panel should dispose of all claims and * * * the arbitration panel, not the court, possesses the direct knowledge needed to rule on the fee requests

* * *." *Cardoso,* 302 Ill.App.3d at 712–714, 236 Ill.Dec. 344, 707 N.E.2d 189. This court agrees with that determination.

{¶ 23} Appellant argues that the award of attorney fees would be speculative at the point where an arbitration panel could award them; however, this reasoning lacks persuasive force. The same argument was addressed in *Cardoso,* in which the Illinois court found that "[t]here was no reason that the arbitration panel could not have discerned whether [the issuee] was entitled to fees pursuant to statute. The same policy reasons set forth by the court in *Cruz,* that the arbitration panel should dispose of all claims and that the arbitration panel, not the court, possesses the direct knowledge needed to rule on the fee requests, lead us to conclude that the defendant should have presented her claim for attorney fees to the arbitration panel." Id. at 713–714, 236 Ill.Dec. 344, 707 N.E.2d 189.

{¶ 24} Appellant also argues that it is unknown whether the arbitration panel's determination will be appealed, and therefore it is inappropriate to set an amount of attorney fees at the time an arbitration panel could award them. Attorney fees would be known at the end of arbitration, and the arbitration panel can properly award fees at that time. The decision of the panel can then be appealed within 30 days of the issuance of the arbitral decision. However, if the decision is appealed, a de novo trial results. The award of attorney fees would also necessarily be appealed, and the determination of fees would then be made de novo by the trial court. While this does result in two separate analyses for fees, this occurs only when the arbitral determination is appealed, when the trial court would be required to address the issue of fees regardless. In cases when no appeal is entered and the judgment becomes final, only one fee determination is made. If appellant's argument was to sway this court, the trial court would always be faced with a hearing for attorney fees when available, thus negating the efficiency that court-annexed arbitration provides. Allowing an arbitration panel to decide the issue of statutory attorney fees creates no ambiguity in the amount of fees or an unnecessarily duplicative determination of fees, as appellant claims.

## V. Conclusion

{¶ 25} While appellant argues that there are substantive differences between the Ohio and Illinois court-annexed arbitration rules, these differences do not deter from the sagaciousness of the holding in *Cruz.* If the mandatory arbitration procedures set forth in Loc.R. 29 are to have any usefulness, then a capitulatory party must be able to rely on the finality of the determination of the arbitration panel, and the panel must be able to dispose of the claims properly before it. Appellant did not reserve the determination of attorney fees for the trial court, nor did he present a claim for such fees to the arbitration panel. Although the

arbitration panel should have awarded fees, appellant's failure to raise the fee issue before the arbitration panel or withhold the issue from their consideration waived the right to collect reasonable attorney fees. Our decision does not impinge on the federal and state legislatures' desire to provide an avenue for the enforcement of certain rights, because successful plaintiffs are still entitled to an award of attorney fees. However, they must present that claim to the arbitrator or reserve it for determination by the trial court. Appellant did not do so in this case, and therefore the sole assignment of error is overruled.

Judgment affirmed.

Dyke, P.J., concurs in judgment only.

Jones, J., dissents.

Larry A. Jones, Judge, dissenting.

{¶ 26} Respectfully, I dissent. I would reverse the trial court's order and remand the case for a determination of attorney fees.

{¶ 27} Loc.R. 29 is a procedural rule, not a rule of jurisdiction as the trial court's decision suggests. Pursuant to the line of authority holding that local rules are rules of procedure, rather than rules of jurisdiction, I would find that the trial court did indeed have the authority to consider and rule on Corbin's request for attorney fees. See, e.g., *Keener v. Gary Von Agency, Inc.* (Nov. 9, 1995), Cuyahoga App. No. 68159, 1995 WL 662105; *Grooms v. Johnson* (Jan. 20, 1989), Montgomery App. No. 11149, 1989 WL 3755. This court has stated that "[e]ven when a case is referred to arbitration pursuant to Loc.R. 29, the trial court does not lose jurisdiction, but specifically retains supervisory powers as to the arbitration proceedings and as to application of the rules." *Inter–Urban Rental Sys., Inc. v. Tullos* (Apr. 25, 1991), Cuyahoga App. No. 58630, 1991 WL 64327.

{¶ 28} Corbin brought his claim pursuant to the FLSA. This law grants to a prevailing plaintiff the right to attorney fees. Section 216(b) of the FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney fee to be paid by the defendant, and costs of the action." The federal statute does not require Corbin's counsel to raise a claim for attorney fees or risk waiving that claim during the fact-finding phase of an adjudication. Rather, the law states that attorney fees shall be in addition to any judgment. The trial court's decision to award attorney fees would typically be subject to the trial court's discretion and reviewed under that standard. *Bittner v. Tri–Cty. Toyota, Inc.* (1991), 58 Ohio St.3d 143, 569 N.E.2d 464. But, in this case, the trial court never exercised its discretion because it erroneously determined that it did not have jurisdiction to

review the matter after the appeal time of the arbitrator's decision had expired. See, e.g., *Keener*.

{¶ 29} To the extent that federal law dictated what matters would be decided during arbitration, the trial court retained the supervisory authority to either send the matter back to the arbitration panel for consideration of attorney fees or to make the finding on attorney fees itself. Thus, the trial court erroneously denied Corbin's request for attorney fees.