WHITE, Appellant,

v.

MURTIS M. TAYLOR MULTI–SERVICE CENTER, Appellee.

[Cite as *White v. Murtis M. Taylor Multi–Serv. Ctr.*, 188 Ohio App.3d 409, 2010-Ohio-2602.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 93431.

Decided June 10, 2010.

Mansour, Gavin, Gerlack & Manos, and John F. Burke III, for appellant.

Frantz Ward L.L.P., Michael J. Frantz, Rebecca J. Bennett, and Lisa M. Jones, for appellee.

MARY EILEEN KILBANE, Presiding Judge.

{¶ 1} Appellant, Danny White, filed suit against his employer, appellee, Murtis M. Taylor Multi–Service Center ("Murtis Taylor"), alleging that he did not receive overtime pay in conformity with the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act ("R.C. 4111.03"). White appeals the trial court's granting of summary judgment in favor of Murtis Taylor. After a review of the pertinent law and facts, we reverse and remand.

{¶ 2} Murtis Taylor is a community mental-health center that provides a variety of social-service programs to Cuyahoga County residents. Murtis Taylor matches its clients who have mental illness or other disabilities with the appropriate community resources. White worked at Murtis Taylor as a Community Support Specialist 1 ("CSS 1") from March 22, 2002, through December 12, 2004. White alleges that while he was often required to work in excess of 40 hours a week, he was never compensated with overtime pay for those additional hours.

{¶ 3} On January 30, 2008, White filed suit against Murtis Taylor, alleging that he was not paid overtime compensation of time-and-a-half as required by both the FLSA and R.C. Chapter 4111. White sought compensatory damages, punitive damages, prejudgment interest, and attorney fees. On March 11, 2008, Murtis Taylor filed an answer denying the allegations.

{¶ 4} On September 15, 2008, Murtis Taylor filed its motion for summary judgment, alleging that pursuant to both the administrative and the learned-professional exemptions of the FLSA, White's position as a CSS 1 was exempt from the overtime provisions of the FLSA and R.C. Chapter 4111. On November 5, 2008, after receiving an extension of time, White filed his brief in opposition. On June 2, 2009, the trial court issued an opinion granting Murtis Taylor's motion for summary judgment, concluding that pursuant to the FLSA, White was exempt from receiving overtime pay pursuant to both the administrative and the learned-professional exemptions.

{¶ 5} White appealed, raising two assignments of error for our review.

The trial court erred when it granted Defendant–Appellee's motion for summary judgment.

The trial court erred when it determined that Plaintiff–Appellant was an exempt employee and not entitled to overtime.

{¶ 6} Because both assignments of error address the summary-judgment decision, we will address them together.

{¶ 7} White argues that the trial court erred when it determined that his position at Murtis Taylor was exempt from the overtime provisions of the FLSA,

thereby granting summary judgment in favor of Murtis Taylor. After a review of the record and pertinent law, we agree.

## Summary–Judgment Standard

{¶ 8} In Ohio, appellate review of summary judgment is de novo. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 9. "Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate." *Mosby v. Sanders*, Cuyahoga App. No. 92605, 2009-Ohio-6459, 2009 WL 4694789, at ¶ 11, citing *Hollins v. Shaffer*, 182 Ohio App.3d 282, 2009-Ohio-2136, 912 N.E.2d 637, ¶ 12.

{¶ 9} The Ohio Supreme Court stated the appropriate test in *Zivich v. Mentor Soccer Club* (1998), 82 Ohio St.3d 367, 696 N.E.2d 201, as follows: "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." *State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶ 9, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 10} The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264. Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); see *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138.

## Analysis

{¶ 11} White alleges that Murtis Taylor violated both the FLSA and R.C. Chapter 4111. Both statutory schemes require employees to be paid overtime for hours worked in excess of 40 hours per week, with certain types of employees being exempt from receiving overtime pay. R.C. Chapter 4111 applies all of the same exemptions as the FLSA; therefore, we need only analyze the FLSA exemptions. See *Thomas v. Speedway SuperAmerica, L.L.C.* (C.A.6, 2007), 506 F.3d 496, 501.

{¶ 12} We note that both the FLSA and R.C. Chapter 4111 are remedial in nature with the underlying policy of allowing employees to vindicate their rights and receive a fair wage. See *Corbin v. Kelly Plating Co.*, 187 Ohio App.3d 129, 2010-Ohio-1760, 931 N.E.2d 204, at ¶ 1. Consequently, the FLSA exemptions are narrowly construed against the employer, and the employer must demonstrate by clear and affirmative evidence that the employee is covered by the exemption. *Burson v. Viking Forge Corp.* (N.D.Ohio 2009), 661 F.Supp.2d 794, citing *Ale v. TVA* (C.A.6 2001), 269 F.3d 680. There is a presumption of nonexemption. *Burson* at 798–799. "Application of the exemption is limited to those circumstances plainly and unmistakably within the exemption's terms and spirit." *Jastremski v. Safeco Ins. Cos.* (N.D.Ohio 2003), 243 F.Supp.2d 743, 747, citing *Douglas v. Argo–Tech Corp.* (C.A.6, 1997), 113 F.3d 67, 70. The manner in which an employee spends his time is a question of fact, while the determination whether his duties fall within an exemption is a question of law. *Jastremski* at 747, citing *Schaefer v. Indiana Michigan Power Co.* (W.D.Mich.2002), 197 F.Supp.2d 935 (reversed on other grounds).

{¶ 13} The FLSA exempts employees who are "employed in a bona fide executive, administrative, or professional capacity." Section 213(a)(1), Title 29, U.S.Code. Murtis Taylor argues that White is exempt pursuant to both the administrative and the learned-professional exemptions of the FLSA.

## Administrative Exemption

{¶ 14} In order for an employee to be exempt pursuant to the administrative exemption, it must be demonstrated that

(1) [The employee is] compensated on a salary or fee basis at a rate of not less than $455 per week * * *;

(2) [The employee's primary duties include] the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3) [The employee's] primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

Section 541.200, Title 29, C.F.R.

{¶ 15} There is no dispute regarding the first element, because the parties agree that White makes in excess of $455 per week. However, the remaining elements are in dispute. Murtis Taylor argues that White's duties were primarily managerial and that White exercised his own discretion in important matters. Murtis Taylor failed to present evidence to support this conclusion.

{¶ 16} Specific examples, as provided in the federal regulations, of tasks that directly relate to general business operations are:

[T]ax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations; government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

Section 541.201(b), Title 29, C.F.R.

{¶ 17} In *Thomas*, 506 F.3d 496, additional duties that fall into the administrative exemption were listed to include the following:

Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the men and the property.

{¶ 18} The record is void of any evidence that White performed any of the aforementioned tasks. White specifically stated that he neither manages nor has any authority over other employees at Murtis Taylor, and Murtis Taylor has presented no evidence to the contrary. Essentially, all of these tasks depict a position in which the employee is part of the policymaking aspect of the company, not simply an employee doing the work of the company.

{¶ 19} Even if there was evidence in the record to suggest that White performed managerial duties, there is still no evidence that White exercised discretion and independent judgment with respect to matters of significance. The exercise of independent judgment requires "the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." Section 541.202, Title 29, C.F.R. Ultimately, the court must consider what ability the employee had to create and implement policies and practices at work. *Frisby v. Keith Weiner & Assoc.* (Apr. 21, 2010), N.D. Ohio No. 1:09–CV–2027, 2010 WL 1630107.

{¶ 20} In *Foster v. Nationwide Mut. Ins. Co.* (Apr. 7, 2010), S.D. Ohio No. 2:08–CV–00020, 2010 WL 1404596, a group of individuals employed as special investigators at Nationwide brought suit seeking overtime compensation. Nationwide moved for summary judgment, alleging that special investigators were exempt from the FLSA requirements pursuant to the administrative exemption.

Summary judgment was denied, as the trial court determined that there was evidence to suggest that the special investigators worked under the supervision of a supervisor and had specific protocol they were required to follow. The trial court concluded that Nationwide could not meet the high burden entitling it to summary judgment on an FLSA exemption.

{¶ 21} Murtis Taylor has also presented no evidence that White exercised discretion with respect to any matters of significance. White simply assisted his clients in learning and completing everyday tasks, such as grocery shopping and locating community resources. Clearly, these are not matters of significance as contemplated by the FLSA. White did not exercise independent judgment in the general business operations of Murtis Taylor. He did not supervise anyone, nor did he perform any administrative functions such as human-resources procurement or management decisions.

{¶ 22} Murtis Taylor failed to meet the high burden under the FLSA of demonstrating that White met the criteria of the administrative exemption.

### Learned Professional Exemption

{¶ 23} Murtis Taylor also maintains that White was a "learned professional" pursuant to Section 541.301(a), Title 29, C.F.R., which states:

(1) The employee must perform work requiring advanced knowledge;

(2) The advanced knowledge must be in a field of science or learning; and

(3) The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction.

{¶ 24} Murtis Taylor cannot establish by clear and affirmative evidence that White's staff position as a CSS 1 satisfies all three prongs of this exemption.

{¶ 25} The first element Murtis Taylor must satisfy to establish that White is a learned professional is that White performs work that requires advanced knowledge. The work must either require advanced knowledge or be of an artistic or creative nature. Specifically, the work is as follows:

[P]redominately intellectual in character, and which includes work requiring the consistent exercise of discretion and judgment, as distinguished from performance of routine mental, manual, mechanical, or physical work. An employee who performs work requiring advanced knowledge generally uses the advanced knowledge to analyze, interpret, or make deductions from varying facts or circumstances. Advanced knowledge cannot be attained at the high school level.

Section 541.301(b), Title 29, C.F.R.

{¶ 26} Clearly, the job description for White's position demonstrates that no advanced knowledge was required. The description simply required

some course work in social work, counseling, psychology, or related disciplines beyond high school. Bachelor's degree in Social Work, Counseling, Psychology, or related field preferred. At least one year of experience in a mental health organization with a background in substance abuse[,] abuse treatment and/or prevention essential.

{¶ 27} The job description evidences that Murtis Taylor is willing to accept applicants who have completed coursework in a variety of disciplines. No specific degree or background is required. Individuals in the CSS 1 position were not required to possess any type of degree.

{¶ 28} Clearly, the record does not support Murtis Taylor's contention that the CSS 1 position required advanced knowledge. White testified that his work included accompanying clients to appointments and referring them to community resources. The CSS 1 position was neither intellectual, nor did it require White to consistently exercise his own judgment. The job description clearly stated that White reported to the Community Support Program Clinical Supervisor. Murtis Taylor's employment offer to White specifically titled his position as a CSS 1, and welcomed him to the "staff." The employment offer itself clearly indicated that White's position as a CSS 1 was a level 1, primary-support position. White also testified that he did not provide treatment to his clients and that his position at Murtis Taylor was in a primary-support role.

{¶ 29} The trial court's journal entry granting summary judgment in favor of Murtis Taylor stated that there was no evidence to suggest that White was required to obtain approval when working with clients. However, even the affidavit of Jacey Liu ("Liu"), White's Clinical Supervisor at Murtis Taylor, stated that White may have often worked unsupervised, but he was still required to submit all of his notes and case plans to her for approval. Liu also stated that White's plans were generally approved, implying that in some instances, White's recommendations were rejected. White stated that he presented case plans for all of his clients, but he was required to obtain final approval on each case plan from his supervisor.

{¶ 30} The parties also dispute how White's pay was calculated when he missed work. White stated in his affidavit that his pay was deducted each time he missed work. However, Liu's affidavit stated that White's pay was deducted only when he missed a full day of work.

{¶ 31} Second, to qualify for the learned-professional exemption, the advanced knowledge must be in the field of science or learning. Murtis Taylor has failed to demonstrate by clear and affirmative evidence that White's support position was in a field of science or learning.

{¶ 32} The field of science or learning encompasses the following:

[T]raditional professions of law, medicine, theology, accounting, actuarial computation, engineering, architecture, teaching, various types of physical, chemical, and biological sciences, pharmacy and other similar occupations that have a recognized professional status as distinguished from the mechanical arts or skilled trades * * *.

Section 541.301(c), Title 29, C.F.R.

{¶ 33} Positions in a field of science or learning are said to be "customarily acquired by a prolonged course of specialized intellectual instruction and study in an institution of higher learning or a hospital, as distinguished from a general academic education or from an apprenticeship or from training in the performance of routine mental, manual, or physical processes * * *." Section 152(12)(a)(iv), Title 29, U.S.Code.

{¶ 34} The professions listed in the regulations are clearly significantly more advanced than White's CSS 1 position at Murtis Taylor. The position is titled as a support position. White's position at Murtis Taylor consisted of teaching daily living skills to his clients. He accompanied them on legal and medical appointments and assisted them in completing everyday tasks such as managing their finances and grocery shopping. Such duties clearly do not fall into the category of science and learning, because these duties do not require any specialized knowledge.

{¶ 35} Addressing the last criteria of the learned-professional exemption, advanced knowledge "customarily acquired by a prolonged course of specialized intellectual instruction" has been explained as

professions where specialized academic training is a standard prerequisite for entrance into the profession. The best prima facie evidence that an employee meets this requirement is possession of the appropriate academic degree.

Section 541.301(d), Title 29, C.F.R.

{¶ 36} The CSS 1 job description does not require a bachelor's or even an associate's degree. Rather, it merely requires some basic coursework, in any one of the numerous listed areas.

{¶ 37} The word "customarily" has been found to mean "that in the vast majority of cases the specific academic training is a prerequisite for entrance into the profession." Section 541.301(d), Title 29, C.F.R. Few qualifications are required of the CSS 1 position at Murtis Taylor. Individuals with little training or coursework were eligible for the support position.

{¶ 38} "When an advanced specialized degree has become a standard requirement for a particular occupation, that occupation may have acquired the characteristics of a learned profession." Section 541.301, Title 29, C.F.R. White received his bachelor of arts degree in both research biology and theology from

Cleveland State University. Neither field of study was relevant to his support position at Murtis Taylor.

{¶ 39} Murtis Taylor relies on the recently decided case *Solis v. State of Washington, Dept. of Social & Health Serv.* (Feb. 16, 2010), W.D.Wash. No. C08–5479BHS, 2010 WL 643174, which concluded that the social workers at issue were learned professionals pursuant to the FLSA and not entitled to receive overtime compensation. However, in *Solis*, the job description set forth clear requirements for its social-worker positions, which Murtis Taylor did not. The social workers in *Solis* were classified as Social Worker 2 and Social Worker 3, depending on their credentials; however, at a minimum, each social-worker position required a bachelor's degree and one year of relevant work experience. While a degree is not always required, a degree is the best prima facie evidence that an employee is a learned professional. Section 541.301(d), Title 29, C.F.R.

{¶ 40} In the instant case, the job description is clearly not as detailed as that in *Solis*, and it requires no specific degree or certain amount of work experience. The job description assumes that individuals of various educational and work backgrounds could serve in the CSS 1 position. Such a vague description does not merit the type of specialized knowledge required of a learned professional. The trial court placed significant weight on the actual education and training White has obtained, when the proper inquiry is the education that is actually required of the position. *Dybach v. State of Florida, Dept. of Corr.* (C.A.11, 1991), 942 F.2d 1562, 1565. While the job description did state that a bachelor's degree was preferred, it stated that only some coursework in a wide variety of areas was actually required.

{¶ 41} The Department of Labor ("DOL") issued an opinion letter on November 4, 2005, that analyzed whether the learned-professional exemption applied to social workers and caseworkers. The DOL concluded that those employed under the recognized title of social worker, and who have completed a master's degree in their field, will generally be exempt from overtime compensation pursuant to the learned-professional exemption.

{¶ 42} However, the DOL concluded that caseworkers whose jobs do not require a bachelor's degree in a specific field are not learned professionals. Simply having a bachelor's degree in any aspect of social sciences is insufficient. Most caseworkers gain the necessary skills while on the job, rather than through education, and the education normally possessed by a caseworker is a general rather than a specialized education.

{¶ 43} While we acknowledge that this court is not bound by the analysis in DOL opinion letters, such letters may be considered by the court as persuasive authority. *Christensen v. Harris Cty.* (2000), 529 U.S. 576, 586–587, 120 S.Ct.

1655, 146 L.Ed.2d 621. The Ohio Supreme Court has previously recognized that opinion letters are persuasive authority in interpreting federal statutes and regulations. See *Johnson v. Ohio Dept. of Youth Serv.*, 96 Ohio St.3d 161, 2002-Ohio-4010, 772 N.E.2d 1157.

{¶ 44} We find the DOL opinion letter to be persuasive and determine that White's position as a CSS 1 did not even rise to the level of a caseworker. White's position was simply a support position. While he assisted his clients with daily living skills, there is no indication that a specialized education was required. Although White did have some background in chemical-dependency issues, he was instructed that individuals employed in his support role were not "officially" permitted to provide any type of counseling. He was instructed that when he provided counseling, he had to be creative in the way he documented it in his notes.

{¶ 45} White's bachelor's degree was clearly unrelated to his work at Murtis Taylor. Further, while White did possess training in chemical dependency and addiction counseling, he was instructed not to provide clients with counseling; therefore, such training was similarly irrelevant to his position as a CSS 1.

{¶ 46} Courts have concluded that highly trained individuals who do not possess an academic degree are not learned professionals. In *Pignataro v. Port Auth. of N.Y. & N.J.* (C.A.3, 2010), 593 F.3d 265, the court concluded that helicopter pilots were not learned professionals. The court reasoned that although such pilots were highly trained and skilled, they did not possess an academic degree and their training and licenses were insufficient to exempt them from overtime compensation pursuant to the FLSA.

{¶ 47} White's position is analogous to *Talbott v. Lakeview Ctr., Inc.* (Sept. 30, 1998), N.D. Fla. No. 3:06CV378/MCR/MD. In *Talbott*, plaintiffs were a group of family-services counselors employed at Lakeview, a center focusing on child abuse and neglect. Family-services counselors were required to possess a bachelor's degree in a related field and one year of relevant work experience. The court in *Talbott* denied Lakeview's motion for summary judgment, concluding that the center had not met its burden of demonstrating that the family-services counselors were covered by the learned-professional exemption. The court determined that the family-services counselors were not learned professionals, even though they were required to have a bachelor's degree, because the bachelor's degree was not required to be in a specific field.

{¶ 48} In the instant case, not only did Murtis Taylor not require a bachelor's degree, but White had significantly less responsibility than the family-services counselors at issue in *Talbott*. The family-services counselors obtained case histories and devised plans to improve the lives of the family members. Further, Lakeview also produced evidence that the family-services counselors spent ap-

proximately 80 percent of their time exercising their own discretion. Murtis Taylor has presented no similar evidence to depict the amount of time White exercised his own discretion.

{¶ 49} The trial court failed to construe the facts in the light most favorable to White. Although the record is unclear with respect to the amount of time White was unsupervised and the extent to which he was permitted to exercise his discretion, the trial court stated that White was not required to seek approval for his decisions regarding clients. This statement is factually inaccurate and fails to construe the facts in the light most favorable to White, as both White and Liu testified that White was required to submit his work for review and approval. The job description also specifically provided that White was to report to the Community Support Program Clinical Supervisor.

{¶ 50} Both the FLSA and Chapter 4111 were enacted to protect the rights of the employee. Therefore, the employer has the burden of demonstrating by clear and affirmative evidence that the employee meets the specific criteria outlined in the exemptions. *Burson*, 661 F.Supp.2d 794. This is a high burden that Murtis Taylor was simply unable to meet in its motion for summary judgment with respect to either the administrative or the learned-professional exemption. Consequently, White's assignments of error are sustained.

Judgment reversed
and cause remanded.

BLACKMON and COONEY, JJ., concur.